REPUBLIC UNDERWRITERS
INSURANCE CO.,
Petitioner,

v.

MEX–TEX, INC., Respondent.

No. 03–0662.

Supreme Court of Texas.

Nov. 19, 2004.

Robert F. Scheihing, Adami Goldman & Shuffield, Inc., San Antonio, for Petitioner.

Robert L. Templeton, Templeton Smithee Hayes Heinrich & Russell, LLP, Amarillo, for Respondent.

Christopher W. Martin, Levon G. Hovnatanian, Martin Disiere Jefferson & Wisdom, L.L.P., Houston, for Amicus Curiae.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice OWEN, Justice WAINWRIGHT, and Justice BRISTER joined.

We must decide whether the commercial property insurer in this case breached its policy obligation to replace a damaged roof with one of "like kind and quality", and if so, whether the insurer's tender of partial payment of the claim avoided, on that amount, the 18% per annum delay penalty imposed by article 21.55 of the Texas Insurance Code. We reverse the judgment of the court of appeals [1] and remand the case to the trial court for rendition of judgment.

Following a May 25, 1999 hail storm in Amarillo declared by the Texas Department of Insurance [2] to be a weather-related "catastrophe for the purpose of claims processing",[3] Mex–Tex, Inc. notified its property insurer, Republic Underwriters Insurance Co., of damage to the roof of Signature Mall, a retail shopping center that Mex–Tex owned. Mex–Tex claimed that the roof had been destroyed and should be replaced. Republic immediately investigated the claim but disputed the amount of damage attributable to hail. The roof had leaked for a long time, and months before the storm Mex–Tex had obtained estimates to replace it. While Republic was still investigating the claim, it learned that Mex–Tex had retained a contractor to go ahead, without waiting on Republic, and replace the roof at a cost of $179,000 with one of the same kind, but which would be fixed to the building me-

---

1. 106 S.W.3d 174 (Tex.App.-Amarillo 2003).

2. See Tex. Ins.Code art. 21.55, § 5(d) ("In the event of a weather-related catastrophe or major natural disaster, as defined by the State Board of Insurance, the claim-handling deadlines imposed under this article are extended for an additional 15 days."); 28 Tex. Admin. Code § 5.9303 (2004) (regulating determina-

tions of catastrophes for purposes of article 21.55, § 5(d)).

3. Texas Department of Insurance Commissioner's Bulletin No. B–0029–99 (June 4, 1999), available at http://www.tdi.state.tx.us/commish/bulletins/b–0029–9.html.

chanically rather than by ballast (that is, rocks) as the old roof had been. Republic's first response was to offer what it believed was the cost to repair the minimal hail damage, $22,000, as what it termed "partial payment" of Mex–Tex's claim, but when Mex–Tex rejected that offer, Republic sent Mex–Tex a check on August 20, 1999, including $145,460, an amount representing what Republic's engineer had determined was the cost of replacing the mall's roof with an identical one, attached by ballast.

Mex–Tex returned the check. Republic re-sent it. Mex–Tex re-returned it. Republic then replied that it would hold the money until Mex–Tex accepted it, which Mex–Tex did on October 12, 2000, as partial payment of its claim. Meanwhile, Mex–Tex had sued Republic for breach of the policy and delay penalties under article 21.55. After trial to the bench, the court found that Republic's failure to pay Mex–Tex the $179,000 was a breach of Republic's policy obligation to replace the roof with one of "like kind and quality"—despite the fact that Mex–Tex's cost exceeded the replacement cost of an identical roof by $33,540—and awarded Mex–Tex that difference in damages. The court also awarded Mex–Tex, under article 21.55, 18% per annum on $179,000 from November 4, 1999, the date the court determined that Republic should have tendered that amount, which was 75 days after it tendered $145,460, to the date Mex–Tex accepted that partial payment almost a year later, and thereafter on the $33,540 difference until judgment. The court of appeals affirmed.[4]

■ Republic's policy provided that in the event of loss, one of its options was to "[r]epair, rebuild or replace the property with other property of like kind and quality", and that it was required to pay only the cost of replacing damaged property with property "[o]f comparable material and quality". Republic argues that it could not have breached the policy by offering to replace Mex–Tex's roof with an identical one and refusing to pay for a more expensive one. But the trial court held that "comparable" does not mean "identical", and found that the roof Mex–Tex installed was comparable to the one it replaced, differing only in the way it was attached to the building. We agree that the plain language of the policy neither restricted nor required Republic to pay for the cost to replace the roof with an identical one. The policy clearly allows more leeway than that. There was evidence to support the court's finding that Mex–Tex's new roof was within that leeway. Mex–Tex's roofing contractor and its expert at trial both testified that the old and new roofs were comparable. The only evidence to the contrary was the difference in cost. In these circumstances, the trial court could find that Republic breached the policy by refusing to pay the cost of the new roof.

■ Republic argues that the delay penalty imposed by article 21.55 should have been calculated only on the $33,540 difference between the payment it tendered Mex–Tex and the full amount Mex–Tex claimed, from the date of the tender until Mex–Tex accepted it. Article 21.55, section 3(f) states that "if an insurer delays payment of a claim [longer than the prescribed period, usually 60 days, but in this case 75 days[5]], the insurer shall pay damages and other items as provided for in Section 6 of this article."[6] Section 6 states:

4.   106 S.W.3d 174 (Tex.App.-Amarillo 2003).

5.   See note 2 *supra*.

6.   Tex. Ins.Code art. 21.55, § 3(f).

In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.[7]

Article 21.55, § 1(3) defines "claim" as follows:

"claim" means a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract *that must be paid* by the insurer directly to the insured or beneficiary.[8]

The emphasized phrase, "that must be paid", limits "claim" to the amount ultimately determined to be owed, which of course would be net of any partial payments made prior to that determination.[9] This encourages insurers to pay the undisputed portion of a claim early, consistent with the statute's purpose "to obtain prompt payment of claims made pursuant to policies of insurance."[10]

■ Mex–Tex does not disagree with this construction of article 21.55 but argues that the penalty should nevertheless be assessed if an insurer's tender of partial payment of a claim is not unconditional. We agree. Otherwise, an insurer's insistence on a release to which it is not ultimately entitled delays payment, again impairing the statute's purpose. Here, the trial court found that Republic did not tender $145,460 unconditionally but "tried to enforce a full and final release of [the claim] when only a partial payment had been made." We must, of course, accept this finding if there is any evidence to support it. The record does not reflect any release language on checks tendered by Republic or in accompanying documents. Mex–Tex cites testimony by both its president and its property manager that their "understanding" was that Republic had tendered the amount in final settlement of the claim, not as partial payment. But absent evidence that their understanding was fairly based on something Republic said or did, that understanding says nothing about Republic's intent.[11] Mex–Tex also cites the following:

- correspondence from Republic referring to its initial $22,000 offer as a "partial payment" and an "initial payment", phrases Republic did not use in connection with its later tender of $145,460;

- the insurance agent's file note stating that he had told Mex–Tex's president immediately before the initial tender of $145,460 that "Republic ready to conclude claim";

- contemporaneous entries in Republic's internal loss report that it had granted "approval ... to pay claim" and

---

7. *Id.* § 6.

8. *Id.* § 1(3) (emphasis added).

9. *Cf. Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 264 (Tex.App.-Austin 2002, pet. granted, judgm't vacated w.r.m. by agr.) (stating that 18% statutory penalty could not be imposed against insurer for periods of time when delay in payment was caused by the insured).

10. Tex. Ins.Code art. 21.55, § 8.

11. *See Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex.1966) (" 'It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding.' " (quoting 1 Corbin, Contracts § 95 (2nd ed.1963))).

"authorized [the claims representative] to settle with [Mex Tex]";

- a letter from Republic accompanying the second tender, stating "we must respectfully deny your proof of loss since the amount is more than we have determined to be the covered loss"; and
- Republic's letter to Mex–Tex's attorney acknowledging return of the check, stating that it had been issued "in good faith as payment for your client's loss".

But none of this evidence shows any clear intent by Republic to condition its tender on a full release of Mex–Tex's claim.

▉ Had Mex–Tex accepted the first tender instead of returning it, and had Republic then attempted to argue that the acceptance amounted to an accord and satisfaction, it would have confronted the following rule:

> The evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim. The minds must meet and where resting in implication the facts proved must irresistibly point to such conclusion. There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; that the offer must be accompa-

nied with acts and declarations which the creditor is "bound to understand".[12]

An insurer cannot tender partial payment of a claim and then, with nothing to satisfy the rule just stated, assert that acceptance was an accord and satisfaction fully releasing the claim. In this case, it was Mex–Tex's burden to prove its right to the delay penalty under article 21.55, but the same rule applies. The burden on Mex–Tex to prove that Republic's offer was conditioned on a full release is no less than the burden would be on Republic if it were making that assertion. The evidence Mex–Tex cites falls far short of this standard. Mex–Tex proved only that the penalty should have been awarded on $33,540 from the time that amount should have been paid until judgment.

▉ The court of appeals held that Republic waived its argument regarding article 21.55 because it cited no supporting authority as required by Texas Rule of Appellate Procedure 38.1(h).[13] Rule 38.1(h) requires "*appropriate* citations to authorities".[14] Republic cited the statute, and it is not clear what other authority the court of appeals thought was necessary since it, too, relied solely on the statutory language. "[W]e have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule."[15] Republic did not waive its argument.

We conclude that from November 4, 1999, 75 days after Republic tendered Mex–Tex partial payment of $145,460, to the date of judgment, Mex–Tex was enti-

---

**12.** *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1969) (citations omitted).

**13.** 106 S.W.3d at 183.

**14.** Tex.R.App. P. 38.1(h).

**15.** *Verburgt v. Dorner,* 959 S.W.2d 615, 616–617 (Tex.1997).

tled to the statutory penalty only on the $33,540 difference between the tendered payment and the amount of Mex–Tex's claim, determined by the trial court to be $179,000. Accordingly, we grant Republic's petition for review and without hearing oral argument,[16] reverse the judgment of the court of appeals and remand the case to the trial court for rendition of judgment consistent with this opinion.

Justice O'NEILL filed a dissenting opinion, in which Justice SMITH joined.

Justice MEDINA did not participate in this decision.

Justice O'NEILL, joined by Justice SMITH, dissenting.

I agree with the Court that some evidence supports the trial court's finding that Republic breached the policy by failing to pay the cost of the comparable roof Mex–Tex installed. I also agree with the Court's definition of a "claim" under Article 21.55 for purposes of assessing penalties, and that the statutory penalty assessed against Republic should be based on the full amount of the claim if its tender of partial payment to Mex–Tex was not unconditional. Here, my agreement ends. I simply cannot conclude, as the Court does, that no evidence supports the trial court's finding that Republic's partial payment was not unconditional. Accordingly, I respectfully dissent.

Article 21.55 subjects an insurer that fails to pay a claim within a prescribed period to a statutory penalty. Tex. Ins. Code art. 21.55, §§ 3(f), 6. The Court correctly concludes that the amount of the "claim" on which a penalty is calculated is not the amount that the insured demands, but the amount that the trial court finds the insurer actually owes under the policy.

The Court also acknowledges that the statutory penalty may be assessed against Republic on the full amount of the claim if its partial payment to Mex–Tex was not unconditional, but concludes there is no evidence to support the trial court's finding that Republic "tried to enforce a full and final release of [the claim] when only a partial payment had been made." I disagree.

There is evidence that it was both Republic's intent and Mex–Tex's understanding that the tender of $145,460 within the statutory period was to settle the claim. That might not in itself be enough to establish as a matter of law that the payment was conditional, as there must also be evidence that the tender was "expressed by acts or declarations with sufficient clarity that [Mex–Tex was] bound to know that [its] acceptance of the tendered payment [would] constitute full payment of [its] claim." *H.L. "Brownie" Choate, Inc. v. Southland Drilling Co.*, 447 S.W.2d 676, 679 (Tex.1969). But here, Republic's letter accompanying the second tender of the check stated, "we must respectfully deny your proof of loss since the amount is more than we have determined to be the covered loss." Moreover, Republic's letter acknowledging return of the check stated the check had been issued "in good faith as payment for your client's loss." If the Court declared a bright-line rule that for a tender of payment to be conditional the tenderor must contemporaneously offer a formal release, I might agree with its conclusion. However, the rule the Court recites is not so definitive, requiring merely that the evidence establish a clear "assent of the parties" and that "the minds must meet." 150 S.W.3d at 427 (citing *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969)).

---

**16.** Tex.R.App. P. 59.1. The dissenting Justices agree that this case may be decided without oral argument.

In *Jenkins,* the trial court granted summary judgment in favor of the defendant debtor on its defense of accord and satisfaction. 449 S.W.2d at 455. We reversed, holding that the debtor's communications to the creditor accompanying the tender did not constitute "unequivocal notice to [the creditor] that the checks were conditionally tendered in full and final satisfaction of [the debtor's] obligation to him at the time." *Id.* Because an accord and satisfaction was not conclusively established, we remanded the case to the trial court for further proceedings. *Id.* at 456; *see also George Linskie Co. v. Miller–Picking Corp.,* 463 S.W.2d 170, 173 (Tex. 1971) (reversing summary judgment on accord and satisfaction and remanding for trial because "defendant did not make known to plaintiff in clear and unmistakable terms that the tender was intended to be made upon the condition that its acceptance would constitute full satisfaction of all pending claims").

In this case, had Republic moved for summary judgment based upon accord and satisfaction, I agree that it would have been unsuccessful. But that Mex–Tex did not conclusively prove Republic's offer was conditional does not mean that the converse—the offer was unconditional—was established, as the Court in essence concludes. Rather, a fact issue was raised that the fact-finder resolved after a trial on the merits. Republic's letters and other evidence regarding the parties' intent support the trial court's conclusion that the parties understood Republic's check was being conditionally offered as full payment of Mex–Tex's claim. I would defer to the trial court's finding on this issue. Because I would affirm the court of appeals' judgment in its entirety, I respectfully dissent.