Affirmed and Memorandum Opinion filed October 16, 2007








Affirmed
and Memorandum Opinion filed October 16, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00324-CV

____________

 

ROBEY BARTEE, Appellant

 

V.

 

BAYLOR COLLEGE OF MEDICINE, DAVID
E. HARVEY BUILDERS, INC., AND EMCOR GOWAN, INC., Appellees

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 04-16991

 



 

M E M O R A N D U M   O P I N I O N








This is an appeal from a summary judgment granted in favor
of a property owner, a general contractor, and a subcontractor in an action
brought by an injured employee of a second-tier subcontractor.  The injured
employee contends the trial court erred in rendering judgment against him
because genuine issues of material fact exist as to whether the property owner,
general contractor, and subcontractor retained control over the construction
work to be performed by his employer, and whether these parties had knowledge
of a dangerous condition at the work site.  Concluding that the
summary-judgment evidence conclusively proved the property owner=s entitlement to
summary judgment under Chapter 95 of the Texas Civil Practice and Remedies
Code, we affirm the trial court=s summary judgment as to the claims
against the property owner.  Concluding that the employee has not presented
argument challenging all of the independent summary-judgment grounds asserted
by the general contractor and the subcontractor, we affirm the trial court=s summary judgment
as to these companies. 

I. Factual and Procedural
Background

Appellee Baylor College of Medicine hired appellee David E.
Harvey Builders, Inc. as the general contractor to oversee a remodeling project
for a building on Baylor=s  premises.  Harvey entered into a
subcontract with appellee Emcor Gowan, Inc. for work on part of the project. 
Emcor thereafter realized that to complete its part of the project, scaffolding
had to be erected on the building, and thus Emcor entered into a subcontract
for Sunbelt Rentals, Inc. to perform that job.  Sunbelt=s employee,
appellant Robey Bartee, is the injured complainant in this case. 

 At the beginning of the construction project, Harvey
organized a project Akick-off@ safety meeting at
which representatives from Harvey, Emcor, and Sunbelt were present.   According
to Harvey: 

 !      The individuals who attended the safety meeting walked around the
job site, discussed safety requirements, reviewed possible measures needed to
make a workplace safe, and identified job site hazards. 

!       The meeting participants identified the roof
capCa six foot by three foot piece of
sheet metalCas a potential fall hazard, and
instructed Sunbelt to cover the roof.[1] 


!       Harvey=s superintendent, Glen McIntire, conducted an inspection on
April 17, 2003, and confirmed that Sunbelt had covered the roof with plywood
and aluminum walk boards.              








!       Whenever a new subcontractor entered the job
site, Harvey would conduct a safety meeting to discuss the job site conditions.
Additionally, Harvey conducted weekly safety meetings throughout the course of
the project.  

!       At a
meeting held on April 17, 2003, Harvey instructed all attendees employed by
Sunbelt to walk only on the permitted and covered pathway on the roof. 

On April 17, 2003, Bartee, while working on the roof,
walked past the area where the roof cap was located.  He noticed that two
plywood and aluminum walk boards had been placed over an area of the roof where
the workers were instructed to walk to get to the scaffolding site.  The
following day, as he walked along the roof, Bartee noticed that the plywood
used to designate the permitted pathway was no longer present and that the two
walk boards were gone.  Bartee, however, continued to walk along the permitted
pathway across the building=s roof and fell through the metal cap
covering part of the roof. Bartee landed approximately fourteen feet below,
suffering various injuries.

Bartee brought suit against Baylor, Harvey, and Emcor,
alleging negligence.  The defendants filed a joint traditional motion for
summary judgment.  The trial court granted the motion.  

Challenging the trial court=s grant of summary
judgment, Bartee asserts two issues on appeal: 

(1)     Whether the trial court erred in concluding
there was no genuine issue of material fact as to whether any of the three
appellees retained actual control of the details of the construction work to be
performed by Sunbelt (Bartee=s employer), and 

(2)     Whether
the trial court erred in concluding there was no genuine issue of material fact
as to whether any of the three appellees had knowledge of a dangerous condition
at the work site and whether the appellees adequately warned Sunbelt and Bartee
about the dangerous condition.








                                                    II. 
Analysis

In reviewing a traditional motion for summary judgment, we
take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences in the nonmovant=s favor.  Dolcefino
v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  If the movant=s motion and
summary-judgment evidence facially establish its right to judgment as a matter
of law, the burden shifts to the nonmovant to raise a genuine, material fact
issue sufficient to defeat summary judgment.  Id.  When, as in this
case, the order granting summary judgment does not specify the grounds upon
which the trial court relied, we must affirm the summary judgment if any of the
independent summary-judgment grounds is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

A.      Did the trial court err in
granting summary judgment in favor of the premises owner? 

In his live petition, Bartee contends that he was an
invitee on Baylor=s premises on the day of the incident,
that Baylor had actual or constructive knowledge of an allegedly dangerous
condition on the premises, and that Baylor failed to exercise reasonable care
to reduce or eliminate the risk.  He further contends that Baylor, as the
property owner, was negligent for failing to: (a) discover and remove the
allegedly defective roof cap, (b) maintain and inspect the roof cap, (c) use
due care to test and inspect the roof cap to determine its durability and
functionality, and (d) warn him of the unsafe condition allegedly posed by the
roof cap.








Bartee=s claims against Baylor are governed by
Chapter 95 of the Texas Civil Practice and Remedies Code.[2] 
See Tex. Civ. Prac. & Rem.
Code Ann. ' 95.001B.003 (Vernon Supp.
2005).  Section 95.001 defines a Aclaim@ as a Aclaim for damages
caused by negligence.@  Bartee=s claims against
Baylor are all claims for damages premised upon negligence.  See id. 
Section 95.002 defines the scope of Chapter 95 and states that the chapter
applies only to negligence claims: 

(1)     against a property owner, contractor, or
subcontractor for personal injury, death, or property damage to an owner, a
contractor, or a subcontractor or an employee of a contractor or subcontractor;
and 

(2)     that
arise[] from the condition or use of an improvement to real property where the
contractor or subcontractor constructs, repairs, renovates, or modifies the
improvement.  

Tex. Civ. Prac. & Rem. Code Ann. ' 95.002 (Vernon
Supp. 2005).  Section 95.003 states: 

A property owner is not liable for personal injury, death, or property
damage to a contractor, subcontractor, or an employee of a contractor or
subcontractor who constructs, repairs, renovates, or modifies an improvement to
real property, including personal injury. . . arising from the failure to
provide a safe workplace, unless: 

(1)     the property owner exercises or retains some
control over the manner in which the work is performed, other than the right to
order the work to start or stop or to inspect progress or receive reports; and 

(2)     the
property owner had actual knowledge of the danger or condition resulting in the
personal injury . . . and failed to adequately warn. 

See
id.
' 95.003.  








In its motion for summary judgment, Baylor asserted that
the summary-judgment evidence proved as a matter of law that it did not
exercise or retain any control over the manner in which the work was
performed.  In this context, Acontrol@ can be shown
through the exercise of actual control or the existence of a contractual right
of control.  Chi Energy, Inc. v. Urias, 156 S.W.3d 873, 879 (Tex. App.CEl Paso 2005, pet.
denied). The right of control is contingent on Baylor=s ability to
control the means, methods, or details of Bartee=s work.  Id. 
Baylor=s right to control
must go beyond the right to order the work to start or stop or to inspect
progress or receive reports.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 95.003.  Baylor
brought forth summary-judgment evidence showing that it was not responsible for
erecting the plywood walkway or walk boards over the roof cap, and that no
representative of Baylor ever gave Bartee or Sunbelt any instructions or
direction on how to perform their work on the premises or how to access the
roof to get to the scaffolding site.  Bartee admitted at his deposition that he
had no contact with anyone from Baylor before the incident in question.  The
contracts between Baylor and Harvey show that Baylor did not have a right to
exercise control over the manner in which the work was performed.  See Dow
Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002) (concluding that
contracts which require compliance with safety codes but do not give any
greater right than the order to start or stop the work do not give a
contractual right to control thereby imposing a duty of care). 

Because Baylor=s summary-judgment
evidence conclusively proved that it did not exercise or retain some control
over the manner in which the work was performed, other than the right to order
the work to start or stop or to inspect progress or receive reports, the burden
shifted to Bartee to raise a genuine issue of fact on this issue.  See Kelly
v. LIN Television of Texas, L.P., 27 S.W.3d 564, 570 (Tex. App.C Eastland 2000,
pet. denied); Dolcefino, 19 S.W.3d at 916.  Bartee argues that Baylor
exercised some control over Sunbelt and its employees because Baylor=s general
contractor (Harvey) exercised control over the operative details such as how
the workers should enter the work site, and the path the workers should follow
to get to the scaffolding site.  In support of this contention, Bartee cites to
excerpts from the deposition of Rick Nunley, Emcor=s superintendent,
and Rock Morille, the manager of the Facility Services Department at Baylor. 
Nunley stated that Asomeone@ from Harvey told
him to tell the Sunbelt employees not to use the ladder to access the roof. 
Assuming this assertion to be true, it still does not create a fact issue as to
whether Baylor controlled the general work over the construction site or the specific
work of Sunbelt.  Morille testified that, although he was responsible for the
entire structure of the Facility Services Department, he never went onto the
roof.  He also stated that he did not maintain the roof himself but was the
director of the research program that had been granted use of the building that
was being renovated.    













Even if Baylor did exercise control as to how the workers
should access the roof, doing so is a matter of safety and does not suggest
that Baylor exercised control over Bartee=s work. General
safety guidelines imposed by Baylor do not amount to Acontrol over the
manner in which the work is performed@ under section
95.003 of the Texas Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. ' 95.003; Dyall
v. Simpson Pasadena Paper Co., 152 S.W.3d 688, 701 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied) (en banc) (concluding that unless the A[property] owner=s >safety= regulation
unwisely imperils the contractor, its imposition and observance must be
encouraged, not discouraged, and cannot reasonably be considered the type of
control the legislature envisioned as coming within the ambit of [section
95.003 of the Texas Civil Practice and Remedies Code]@).  The
summary-judgment evidence conclusively proves that Baylor=s right to control
did not extend to anything other than the Aright to order the
work to start or stop or to inspect progress or receive reports,@ as permitted by
section 95.003(1).  See Dyall, 152 S.W.3d at 700B07 (holding that
paper mill owner did not exercise or retain control over repairs made by
independent contractor=s employee on leaking flange, and thus
applicable statute precluded owner=s liability for
injuries to contractor=s employee from inhaling chlorine
dioxide); Ashabranner v. Hydrochem Indus. Servs., Inc., No. 14-03-00762-CV,
2004 WL 613026, at *2B3 (Tex. App.CHouston [14th]
Dist.] Mar. 30, 2004, no pet.) (mem. op.) (holding that petroleum company that
did not exercise control over independent contractor under section 95.003 of
the Texas Civil Practice and Remedies Code); Phillips v. Dow Chem. Co., 186
S.W.3d 121, 135B36 (Tex. App.CHouston [1st
Dist.] 2005, no pet.) (concluding summary-judgment evidence conclusively proved
owner of chemical plant did not Aexercise or retain
some control@ under section 95.003 and thus was not liable on
claims arising from death of construction worker resulting from a fall off of
scaffolding, where the contractor erected scaffolding and had the
responsibility to inspect it at the end of every shift, although owner
promulgated safety standards and had the right to order work stopped for safety
violations).  We conclude that the trial court correctly granted summary
judgment as to Baylor based upon section 95.003, and we overrule Bartee=s first issue as
to Baylor.[3]


B.      Has the
injured worker challenged all of the independent summary-judgment grounds
asserted by the general contractor and the subcontractor?

In his live petition, Bartee alleged the following conduct
by Harvey to support Bartee=s negligence claim:

1.       Failure to participate with Harvey=s subcontractors in a review of the
construction sites for emphasizing potential dangerous areas for subcontractor
employees to avoid, or that areas be made safe;

2.       Failure to use ordinary care in supervising
Harvey=s employees or subcontractors to
make certain that construction site rules for the subcontractor employees= safety were instituted and
implemented by its subcontractors pursuant to the contract documents and OSHA,
state or city safety rules;

3.       Failure to use ordinary care in taking
precautions to protect the safety of [s]ubcontractors[=] employees when an inherently
dangerous condition at the construction site existed, such as the metal roof
cap;

4.       Failure to use ordinary care in not
properly reviewing, correcting, or modifying the plan to provide a safe access
to the site where the scaffolding was to be erected; and

5.       Failure to use ordinary care by not
providing nor directing that the subcontractor use yellow ribbon tape, or other
indicators, to accentuate the potential danger spots on the access to the site
where the scaffolding was to be erected. 

As to
Emcor, Bartee alleged the conduct in items 2, 4, and 5 above as well as a
failure Ato inspect for
inherently dangerous condition [sic] at the construction site since employees
had to climb and walk on roofs to get to the scaffolding site.@  








In their motion for summary judgment, Harvey and Emcor
asserted the following traditional summary-judgment grounds:

!       They satisfied any duty to warn at a safety
meeting attended by representatives of Sunbelt, during which the roof cap was
identified as a potential hazard and they confirmed with Sunbelt that it would 
cover the roof cap. They instructed Sunbelt and its employees not to walk on
the roof cap at a pre-construction safety meeting and at a job site safety
meeting the day before the accident.  Harvey  did not have a duty to warn every
single Sunbelt employee of this danger.  See Keeth v. Phillips
Petroleum Co., 482 S.W.2d 291, 294B95 (Tex. Civ. App.CAmarillo 1972, writ ref=d n.r.e.) (holding that duty to warn was satisfied by the
inspection, knowledge, and appreciation of the danger of plaintiff=s foreman).

!       The summary-judgment evidence conclusively
proves that the dangerous condition of the roof cap was open and obvious.  

!       They did not exercise actual control over or
have the right to control Sunbelt=s work.

!       They had no duty to ensure that Sunbelt
followed OSHA standards.

The trial court granted the motion without specifying the
ground on which it relied.  Therefore, on appeal, Bartee must show that each
independent ground alleged in the motion is insufficient to support the summary
judgment.  See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.,
207 S.W.3d 801, 826 (Tex. App.CHouston [14th Dist.] 2006, pet denied). 
However, on appeal, Bartee has treated all three defendants collectively, as if
Chapter 95 applied to each of them.  Bartee has briefed arguments that there is
a fact issue as to whether the three defendants exercised or retained some
control over the manner in which Sunbelt performed its work and as to whether
the defendants had actual knowledge of a dangerous condition at the worksite
and failed to adequately warn.  Although Bartee has presented argument
challenging the third ground listed above, Bartee has not presented argument as
to the other three grounds.  








Texas Rule of Appellate Procedure 38.1(h) requires
appellate briefs to Acontain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record.@  Tex. R. App. P. 38.1(h); Republic
Underwriters Ins. Co. v. Mex‑Tex, Inc., 150 S.W.3d 423, 427 (Tex.
2004).  Appellate courts must construe the Texas Rules of Appellate Procedure
reasonably, yet liberally, so that the right to appeal is not lost by imposing
requirements not absolutely necessary to effect the purpose of a rule. 
Republic Underwriters Ins. Co., 150 S.W.3d at 427.  Bartee has not provided
any argument, analysis, or citations showing how the trial court erred in
granting summary judgment based on the grounds that  Harvey and Emcor satisfied
any duty to warn by warning Sunbelt=s representative
and other employees and that no warning was needed because the dangerous
condition was open and obvious.  Even construing Bartee=s brief liberally,
we cannot conclude that he has adequately briefed these issues.  See San
Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 337 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Bartee is required to attack every independent ground
upon which the trial court could have granted summary judgment as to his
negligence claims against Harvey and Emcor.  See Ramco Oil & Gas Ltd.,
207 S.W.3d at 826.  Because Bartee has failed to do so, we conclude the trial
court did not err in granting summary judgment as to these claims.  See Fish
v. Marsters Co., No. 14-06-00129-CV, 2007 WL 1438555, at *5 (Tex. App.CHouston [14th
Dist.] May 17, 2007, pet. filed) (mem. op.) (affirming summary judgment
regarding claims for which appellant failed to present argument attacking all
of the independent summary-judgment grounds). Accordingly, we overrule Bartee=s first and second
issues as to his claims against Harvey and Emcor.

We affirm the trial
court=s judgment.                                  

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed October 16, 2007.

Panel
consists of Justices Frost, Seymore, and Guzman.









[1]  Our record does not reveal which Sunbelt employees
were actually in attendance or whether Bartee attended this meeting. 





[2]  Bartee agrees that his claims against Baylor are
governed by Chapter 95 of the Texas Civil Practice and Remedies Code. 





[3]  Because the summary-judgment evidence conclusively proved that Baylor
was entitled to summary judgment under the first prong of section 95.003(1), we
need not and do not address the second prong of section 95.003 or Bartee=s second issue as to Baylor, which
addresses this prong.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 95.003.