# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0280

═══════════

LOUIS HINOJOS, PETITIONER,

v.

STATE FARM LLOYDS AND RAUL PULIDO, RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

═══════════

JUSTICE BLACKLOCK, joined by JUSTICE GUZMAN, dissenting.

The Court suggests the outcome of this case is controlled by our recent decisions in

*Barbara Technologies Corp. v. State Farm Lloyds*, 589 S.W.3d 806 (Tex. 2019) ("*Barbara Tech*"),

and *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127 (Tex. 2019) ("*Ortiz*"). I disagree. The issue in

*Barbara Tech* and *Ortiz* was whether, by invoking the contractual appraisal process, an insurer can

re-set section 542.058's prompt-payment clock and thereby avoid penalties owed by an insurer

who "delays payment." TEX. INS. CODE § 542.058.[1] I joined the dissent in those cases, but they

are now the precedent of the Court. They do not, however, answer the question posed in this case:

Has an insurer who makes a timely payment to its insured but later agrees to pay a higher amount

---

[1] *See Ortiz*, 589 S.W.3d at 135 (summarizing *Barbara Tech*'s holding) ("As we hold today in *Barbara Technologies*, an insurer's payment of an appraisal award does not as a matter of law bar an insured's claims under the Prompt Payment Act.").

"delay[ed] payment of the claim" under section 542.058(a) and thereby subjected itself to liability under the Prompt Payment of Claims Act?

The Court relies on the following statement from *Barbara Tech*: "Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process." *Ante* at ___ (quoting *Barbara Tech.*, 589 S.W.3d at 819). This sentence mirrors the statutory text by observing that an insurer who "delays payment" owes TPPCA penalties. But the question presented today is not whether insurers who "delay[] payment of a claim" violate the TPPCA. All agree they do. The question is what it means to "delay[] payment of a claim." *Barbara Tech* never squarely addresses that question, other than to hold that invoking a contractual appraisal provision does not excuse an otherwise "delay[ed] payment."

*Barbara Tech* itself described the question it was attempting to answer: "We must determine whether an insurer can be liable for TPPCA damages *when it initially denied the claim* but later paid the insured in full according to the amount of loss determined through the policy's appraisal process." 589 S.W.3d at 815 (emphasis added). The Court answered that insurers who initially deny a claim and later make payment after an appraisal have "delay[ed] payment" for purposes of section 542.058(a). The Court never wrestled with what it means to "delay[] payment of the claim," instead focusing on the impact of the appraisal process on the TPPCA's deadlines. Although I disagreed with *Barbara Tech*'s treatment of the appraisal process, I concede that when the insurer makes no payment at all until many months beyond the statutory deadline, it makes sense to say the insurer has "delay[ed] payment of the claim." Yet what about insurers who

2

initially make a timely payment? If the insurer pays a claim in the amount it thinks it owes by the deadline, I find it difficult to see how the insurer has "delay[ed] payment of the claim." The insurer may have paid the claim in an amount less than the claimant hoped, and it may incur additional liability if it has done so in bad faith, but the payment of the claim was timely, not delayed.

*Barbara Tech* repeatedly states its holding as applicable to claims that have been initially "rejected" or "denied." *Id.* at 809, 813, 815, 817, 820, 823, 825–28. But in today's case, Hinojos's claim was never rejected or denied. It was partially paid, on time. The closest *Barbara Tech* comes to addressing Hinojos's situation actually points in the other direction. The Court in *Barbara Tech* quoted at length from *Breshears v. State Farm Lloyds*, 155 S.W.3d 340 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied), a court-of-appeals case this Court endorsed as "persuasive." The passage from *Breshears* quoted favorably in *Barbara Tech* is worth reproducing in full:

> The Breshears argue that because of the appraisal process, they were not actually paid until after State Farm paid them the difference between the first payment and the appraisal award, which occurred long after the sixty-day statutory limit. The Breshears also argue that by invoking the appraisal process, State Farm did not notify them as to whether it intended to pay their claim within the time required by the code. We disagree. The Breshears were paid by State Farm within the sixty-day limit, and they were notified that State Farm would pay the claim when State Farm sent them an estimate of the cost of their repairs accompanied by a check. The fact that the appraisal process was later invoked does not alter the fact that State Farm complied with the Insurance Code . . . .

*Barbara Tech*, 589 S.W.3d at 821–22 (quoting *Breshears*, 155 S.W.3d at 345).

*Breshears* thus involved a situation much like today's case. The insurer made an initial timely payment. Then later, after an appraisal, it paid more. The court of appeals rejected the Breshears' argument that State Farm's later payment of the higher amount gave rise to prompt-

3

pay liability. The court sided with State Farm and held that, by virtue of the initial timely payment that turned out to be too low, "The Breshears were paid by State Farm within the sixty-day limit," and State Farm thereby "complied with the Insurance Code." *Id*. In *Barbara Tech*, this Court endorsed the above-quoted passage from *Breshears*. Thus, far from indicating that a timely initial payment cannot satisfy section 542.058 if it turns out to be lower than the amount ultimately paid, *Barbara Tech* suggests the opposite by quoting *Breshears* with approval. Today, however, the Court says State Farm owes prompt-pay damages for doing *exactly* what it did in *Breshears*. *Barbara Tech* is no doubt a dense thicket, but surely it cannot both endorse *Breshears* as "persuasive" and also compel the Court to abrogate *Breshears* in today's case.

Although the Court's opinion relies principally on *Barbara Tech* and *Ortiz*,[2] by my reading the case truly doing the heavy lifting under the Court's reasoning is *Republic Underwriters Insurance Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423 (Tex. 2004). Unlike *Barbara Tech*, *Mex-Tex* does deal to some extent with what it means to "delay[] payment of a claim" under the Insurance Code. *Mex-Tex* construed the statutory definition of "claim" in Chapter 542's predecessor statute. Then and now, the definition reads:

> "Claim" means a first-party claim that:
> (A) is made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract; and

---

[2] The Court also relies on *Alvarez v. State Farm Lloyds*, 601 S.W.3d 781 (Tex. 2020) (per curiam). That case also involved a partial payment within the TPPCA deadline. However, as in *Barbara Tech* and *Ortiz*, the Court had no occasion to squarely address whether the partial payment precluded liability under the TPPCA. Just as in *Barbara Tech* and *Ortiz*, we held only that the invocation of appraisal and payment of the appraisal award did not bar recovery under the TPPCA. *Alvarez*, 601 S.W.3d at 783. Although the facts in *Alvarez* were similar to this case, we are not bound by unstated, implied holdings on legal issues the Court's opinion did not squarely address. *See Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 307 (Tex. 1994).

.

4

(B) must be paid by the insurer directly to the insured or beneficiary.

TEX. INS. CODE § 542.051(2). In resolving the issue before it, the Court in *Mex-Tex* focused on the definition's use of the phrase "must be paid by the insurer." The Court stated, "The emphasized phrase—'that must be paid'—limits 'claim' to the amount ultimately determined to be owed, which of course would be net of any partial payments made prior to that determination." *Mex-Tex*, 150 S.W.3d at 426 (dashes added). The Court today takes this statement from *Mex-Tex* to be a judicial paraphrase of the entire statutory definition of "claim." Because of *Mex-Tex*, the Court reasons, "claim" now means "the amount ultimately determined to be owed." If that is right, then an insurer would always "delay[] payment of a claim" until it finally pays the "amount ultimately determined to be owed." But it is not right.

For four reasons, the quoted language from *Mex-Tex* should not be understood to provide a definition of "claim" that can automatically be applied in today's case. First, *Mex-Tex* itself does not purport to do that. It does not say that the definition's use of the phrase "must be paid by the insurer" *means* that a "claim" and "the amount ultimately determined to be owed" are the same thing. Instead, it says the phrase "'must be paid by the insurer' . . . *limits* 'claim' to the amount ultimately determined to be owed." (emphasis added). In other words, *Mex-Tex* says the "claim" on which prompt-pay damages are calculated can be *no higher* than "the amount ultimately determined to be owed."

Second, the dispute the Court was resolving in *Mex-Tex* further demonstrates that its characterization of the word "claim" was intended to place an upward limit on the amount from which prompt-pay damages are calculated, not to restrictively define the word "claim" for all

5

purposes in the prompt-pay statute. In *Mex-Tex*, the insured sought prompt-pay damages on the total amount the insurer ultimately paid. *Id.* at 425. The Court rejected that request, holding that prompt-pay damages could only be recovered on the amount that was paid late. *Id.* at 427–28. In effect, the Court held that *Mex-Tex* could not recover damages on more than it was owed when the prompt-pay clock ran out. Under *Mex-Tex*, for purposes of calculating prompt-pay liability, a "claim" can never be higher than the amount determined to be owed, but *Mex-Tex* says nothing about whether the amount of a "claim" can ever be lower than that amount. Considering the sentence from *Mex-Tex* in its context, it is clear to me that the Court did not intend to restrictively redefine the statutory word "claim" to mean only "the amount ultimately determined to be owed."

Third, it makes no difference that the outcome of *Mex-Tex* was that the insurer paid prompt-pay damages even after making, as State Farm did here, an initial timely payment. The insurer in *Mex-Tex* never argued—as the insurer in *Breshears* did and as State Farm does here—that its initial payment satisfied section 542.058. Instead, in *Mex-Tex*, the insurer argued only that it did not owe prompt-pay damages on amounts it paid on time. This Court agreed with that argument but never considered whether the initial payment was a timely payment that discharged the insurer's prompt-pay obligations. Needless to say, this Court' silence on an issue never raised has no precedential effect.

Fourth, and perhaps most importantly, the result of understanding the word "claim" as the Court believes *Mex-Tex* requires would be to make several passages in Chapter 542 unintelligible. To begin with, an insurer cannot "receive[] notice of a *claim* . . . acknowledge receipt of the *claim* . . . or commence an[] investigation of the *claim*," TEX. INS. CODE § 542.055, if the "claim" is "the

6

amount ultimately determined to be owed." Likewise, the insurer could not "accept[]" or "reject[]" the "claim" by the deadline in section 542.056 because the insurer would not yet know "the amount ultimately determined to be owed." And if "claim" means "the amount ultimately determined to be owed," then the statutory definition of "claim" is internally contradictory. A claim cannot be "made by an insured or policyholder under an insurance policy," *id*. § 542.051(2)(A), for an amount that will not be determined until it is later decided how much "must be paid by the insurer," *id*. § 542.051(2)(B).

In sum, although *Mex-Tex* comes closer to addressing the pertinent question than does *Barbara Tech*, neither case answers the question presented here: Has an insurer who timely pays a claim in the amount it decides it owes and then later agrees to pay a larger amount "delay[ed] payment of a claim"? To answer that question, we should look anew at the text of the statute. The first thing to notice about the way the prompt-pay statute uses the word "claim" is that it does so in many different ways. As indicated above, the word "claim" is used repeatedly throughout Chapter 542. A claim is made by an insured, its receipt is acknowledged, it is investigated, more information may be requested, the claim is accepted or rejected, the claim (or "part of a claim") is paid, and finally, if the insurer "delays payment" or otherwise violates the subchapter, a penalty is calculated based on the claim. TEX. INS. CODE § 542.051 *et seq.* Throughout this process, the *amount* of the "claim" may increase or decrease depending on the parties' decisions and on the context in which the statute uses the word. There is no talismanic "amount" of a claim that is fixed across time and across the statute's multiple uses of the word "claim."

7

There is, however, a strong textual indication that an insurer who timely pays "a claim or part of a claim" does not "delay[] payment of the claim" under section 542.058. Under section 542.057(a), "if an insurer notifies a claimant under Section 542.056 that the insurer will pay a claim *or part of a claim*, the insurer shall pay the claim not later than the fifth business day after the date notice is made." TEX. INS. CODE § 542.057(a) (emphasis added). Under section 542.057(a), when State Farm notified Hinojos that it "will pay . . . part of a claim," State Farm incurred an obligation to "pay the claim not later than the fifth business day after" the notice. The statute thus contemplates that paying the "part of the claim" the insurer agrees it owes amounts to "pay[ing] the claim." *Id*. The obligation to "pay the claim" by the fifth business day was discharged when State Farm paid the "part of the claim" it told Hinojos it would pay. No obligation arose to pay a yet-to-be-determined-amount-ultimately-owed by the fifth business day.

Even though partial payment of a claim unquestionably counts as "pay[ing] the claim" in section 542.057, the Court concludes that partial payment does not count as "payment of the claim" in the very next section, 542.058. I can see no basis in the statute for such an odd result. To the contrary, the premise of section 542.058 is that the prompt-pay clock begins to run after the insurer has had time to gather "items, statements, and forms reasonably requested and required" so that the insurer can determine how much of the claim to pay. As the Court sees it, however, the amount paid as a result of that investigation is not "payment of the claim." So the obligation to make "payment of the claim" within 60 days arises after the insurer receives all materials required for its investigation, but making payment based on the results of the investigation is not "payment of the claim." This puts the insurer in no man's land. It has no way of knowing whether it has paid

8

the claim or delayed paying the claim until the insured accepts a settlement or an amount owed is fixed through appraisal or litigation.

By my reading, the statute's use of the verb "delay" suggests a deliberate act. *E.g.*, *Delay*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The act of postponing or slowing"). One who timely pays what he believes he owes does not "delay," as that word is commonly understood.[3] Under the Court's reasoning, however, the insurer "delays payment" not by paying too late, but by not paying enough. Yet at the time of payment, the insurer *cannot know* what is enough. It "delays payment" without knowing whether it has done so and with no way of knowing whether it will later be found to have done so. It cannot make a timely "payment of the claim" by paying "part of the claim," despite section 542.057's clear indication to the contrary. Instead, it can only make "payment of the claim" by paying an amount that is unknowable at the time of payment. The statutory text does not compel so curious an outcome, and we should not adopt one.

As I see it, the simple approach that best comports with the statutory text is that an insurer who timely pays its insured's claim at an amount lower than the insured would like has not "delay[ed] payment of the claim." I acknowledge that insurance companies have an incentive to low-ball insureds and hope they will accept the initial offer. But statutory claims are available against insurers who make low offers in bad faith. TEX. INS. CODE §§ 541.060(a)(2) & 542.003(b)(4). Our job is to apply the statutory text, not to worry about whether the text wisely aligns the incentives. The text we are applying is the Prompt Payment of Claims Act, not the

---

[3] An insurer that deliberately paid less than it determined it owed would face separate statutory liability for its bad-faith handling of the claim. TEX. INS. CODE §§ 541.060(a)(2) & 542.003(b)(4).

Maximum Payment of Claims Act. Its stated goal is to "promote the *prompt* payment of insurance claims." *Id.* § 542.054 (emphasis added). It does just that. If some believe the statute should encourage insurers to offer *higher* payments in addition to *prompt* ones, their concerns should be directed to the Legislature.

 I respectfully dissent.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** March 19, 2021