COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-176-CV

 

 

GUIDEONE LLOYDS INSURANCE                                            APPELLANT

COMPANY

                                                      V.

 

FIRST BAPTIST CHURCH                                                         APPELLEE

OF BEDFORD

                                                  ------------

 

              FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                   OPINION ON REHEARING

 

                                                  ------------

Appellee First Baptist Church of Bedford (AFBCB@) filed
a motion for rehearing of our opinion issued on July 17, 2008.  Appellant GuideOne Lloyds Insurance Company (AGuideOne@) also
filed a motion for rehearing.  We grant
FBCB=s motion
for rehearing in part, withdraw our opinion and judgment dated July 17, 2008,
and substitute the following in its place. 
We deny GuideOne=s motion for rehearing.








                                             I.  INTRODUCTION

GuideOne appeals from a jury verdict rendered in
favor of FBCB for damages arising out of a 2003 claim for hail damage to FBCB=s
roof.  In four issues, GuideOne argues
that the trial court erred by disregarding the jury=s
finding that GuideOne unconditionally tendered funds to FBCB after suit had
been filed, that the trial court erred by awarding FBCB prejudgment interest at
the incorrect rate, and that the trial court abused its discretion by denying
GuideOne=s
requested jury charge questions and instructions and by denying GuideOne=s motion
for new trial.  We will modify the
judgment in part and affirm as modified.

                            II.  FACTUAL AND PROCEDURAL BACKGROUND

GuideOne issued an insurance policy insuring FBCB=s
commercial property for certain physical losses, including hail damage.  The policy insured for replacement cost
coverage, which allowed for roof replacement, if needed, and provided for code
upgrade coverage and for emergency repair expenses.

A severe hail storm damaged FBCB=s roof
on April 5, 2003.  The Texas Department
of Insurance determined that the Aweather-related
events occurring on April 5, 2003 through April 6, 2003@ were Aa
catastrophe for the purpose of claims processing.@  FBCB notified GuideOne of the loss on April
30, 2003.








In May 2003, a GuideOne adjuster inspected the
roof, acknowledged that the roof had been damaged by hail, and indicated that
an engineer would have to assess the damage to the roof.  An individual with Haag Engineering (AHaag@)
inspected the roof for GuideOne a few weeks thereafter.  Haag=s June
23, 2003 report and the June 26, 2003 claim log notes of Sandee Stolowski, the
GuideOne adjuster handling FBCB=s claim,
indicate that Haag had determined by its inspection that all sections of the
roof had scattered hail-caused damage and that the roof could not be repaired
but had to be replaced. Indeed, FBCB=s roofCwhich
consists of two roofing systems, a three-ply built-up roof with a rock-gravel
ballast below a modified bitumen asphalt roofCbegan
leaking after the April 2003 hail storm, causing ceiling panels and carpet
inside to become stained.  The roof did
not leak before the April 2003 storm.








Precision Roofing (APrecision@) subsequently
inspected the roof on behalf of GuideOne to prepare an estimate to repair the
roof.  Precision=s
estimate, which was faxed to GuideOne on August 28, 2003, estimated a cost of
approximately $104,000 to repair the roof. 
Meanwhile, FBCB had enlisted Year Around Roofing, Inc. (AYear
Around@) to
inspect its roof and submit an estimate too. 
Year Around=s August 7, 2003 estimate
indicated a cost of approximately $170,000 to replace the roof.  Year Around later submitted a revised
estimate, which included a cost of $42,000 for an R-19 insulation upgrade,
which FBCB claimed the City of Bedford required in connection with the roof
repairs. GuideOne questioned whether the R-19 upgrade was necessary for
commercial construction.








In late September 2003, Stolowski prepared a
Property Captioned Report with an AAction
Plan@
indicating that she planned to seek approval to pay an amount equal to
Precision=s estimate of approximately
$104,000, less depreciation of $17,634.22. 
Also in late September or early October 2003, an FBCB representative and
Billy Owens, a GuideOne senior property claims specialist, met with a few
others at FBCB in an effort to reconcile the respective estimates that had been
submitted on the roof.  At the meeting,
it Awas
expressed [by GuideOne] that [FBCB] didn=t need a
new roof, that all we needed to do was spray some . . . silver paint type
mastic over it.@ 
Thereafter, on October 22, 2003, Stolowski notified FBCB that GuideOne
wanted to take samples of the roof to have them analyzed to determine the
covered damages. According to GuideOne, A[i]f the
hail did not allow the water to penetrate, th[e]n what we would owe is to spot
repair any damaged hits and re-coat with a similar silver coating as well as
combing the A/C coils and any other hail damage.@  Owens testified that GuideOne had determined
at some point around this time that it at least needed to replace the top of
the roof; however, Owens questioned whether GuideOne needed to upgrade the
insulation and replace the lower levels of the roof, which consisted in part of
a steel metal decking layer that had corroded. 
GuideOne sent another letter on November 24, 2003, referencing the
October letter and inquiring whether FBCB was in agreement.

GuideOne sent a letter dated December 26, 2003,
to FBCB indicating for the first time that Athe
replacement cost of your claim is $104,437.62 . . . .  The applicable depreciation is $17,634[.]11
less your policy=s applicable $1000.00
deductible, [which] results in a net payment in the amount of $85,803.40.  Please be advised [that] your recoverable
depreciation is $17,634.22.@  The letter additionally provided that FBCB
had A180 days
from the date of [the] loss to complete the work and collect the recoverable
depreciation and debris removal under your insurance policy.@  The letter further directed FBCB to the
Appraisal portion of the policy, and it included a check in the amount of
$85,803.40.  FBCB interpreted GuideOne=s letter
as a settlement offer and consequently declined to accept the check because,
according to FBCB, doing so would not have allowed FBCB to collect other
amounts that it was entitled to collect on the claim, including sufficient
funds to cover the R-19 insulation.








FBCB=s
attorney sent a letter to GuideOne dated March 17, 2004, offering to settle the
claim for $211,497, which consisted of $206,497 for repair costs, including the
R-19 upgrade, and $5,000 for attorney=s
fees.  At a meeting between GuideOne and
FBCB on April 20, 2004, GuideOne offered to repair the roof for $164,000, to
pay approximately $7,000 for temporary repairs to the roof, and to pay
reasonable attorney=s fees.  GuideOne=s offer
did not include payment for the R-19 upgrade. 
FBCB declined GuideOne=s offer
to repair the roof, but it accepted GuideOne=s check
covering the approximately $7,000 in temporary repairs to the roof.

In July 2004, FBCB forwarded to GuideOne a letter
addressed to it from the City of Bedford stating that Ainsulation
installed continuously over the roof framing shall have R-19.@  GuideOne acknowledged at trial that it
learned in July 2004 that a state statute required the installation of the R-19
insulation, but it did not offer to pay for the insulation upgrade before FBCB
filed suit on August 20, 2004, for breach of contract, breach of duty of good
faith and fair dealing, violations of former articles 21.21 and 21.55[1]
of the Texas Insurance Code, and for violations of the Deceptive Trade
Practices Act (ADTPA@).








By letter dated July 7, 2005, and Ain
response@ to an
FBCB settlement offer, GuideOne offered $155,000 as an Aamount
calculated as the >like kind= roof
replacement estimate from Precision Roofing, less depreciation and FBCB=s
deductible, then adding the current replacement cost of the R-19 insulation
upgrade, and an additional amount for attorney=s fees.@  FBCB rejected GuideOne=s Asettlement
offer,@ which
GuideOne referred to as an Aunconditional
tender@ in both
the letter and subsequent correspondence.








A jury awarded FBCB damages in the amount of
$286,596.63 on FBCB=s breach of contract claim,
$60,000 on FBCB=s article 21.21 claims, $30,000 based
on an affirmative finding that GuideOne=s
article 21.21 violations were committed knowingly, $30,000 in actual damages
and $55,000 in exemplary damages on FBCB=s breach
of duty of good faith and fair dealing claim, and $100,000 in attorney=s fees
for preparation and trial.[2]  The jury additionally found that although
GuideOne did not make an unconditional tender of $85,803.40 to FBCB on December
26, 2003, Ato apply toward repairs of the
covered April/May 2003 hail damage to the roof with like kind or quality and to
upgrade the roof with R-19 insulation,@
GuideOne had made an unconditional tender of $155,000 to FBCB on July 5,
2005.  FBCB moved for judgment on the
jury=s
affirmative breach of contract and article 21.21 findings, on its article 21.55
claim for interest, and on the jury=s
attorney=s fees
finding.  FBCB did not move for judgment
on the jury=s affirmative breach of duty of
good faith and fair dealing findings, and it moved the trial court to disregard
the jury=s
finding that GuideOne made an unconditional tender of $155,000 to FBCB on July
7, 2005.

GuideOne filed a motion for new trial on January
2, 2007.  The trial court did not rule on
the motion but instead signed a judgment on March 9, 2007, awarding FBCB the
following amounts:

$765,105.44, consisting
of actual damages in the amount of $346,596.63 ($286,596.63 on Plaintiff=s breach of contract
claim and $60,000 on Plaintiff=s claims under article 21.21 of the Texas Insurance
Code); 18% interest under article 21.55 of the Texas Insurance Code of
$188,398.71; 8.25% common law prejudgment interest of $80,637.23 on Plaintiff=s breach of contract
damages; 8.25% common law prejudgment interest [of] $16,639.92 on Plaintiff=s article 21.21 damages
of $60,000; additional damages of $30,000; attorney=s fees of $100,000
through trial, and court costs of $2,832.95.

 








By its award of $188,398.71 as an eighteen percent statutory interest
penalty on the full amount of the $286,596.63 award for GuideOne=s breach
of the insurance contractCbeginning on July 15, 2003 and
continuing through the date the trial court signed the judgmentCthe
trial court disregarded the jury=s
finding that GuideOne made an unconditional tender to FBCB on July 5,
2005.  The judgment also awards FBCB
appellate attorney=s fees and postjudgment
interest.  GuideOne appeals.

III.  UNCONDITIONAL TENDER AND STATUTORY INTEREST PENALTY ACCRUAL

GuideOne asserts three separate arguments in its
first issue relating to the trial court=s
eighteen percent penalty interest calculation of $188,398.71.  GuideOne first argues that the trial court
erred by disregarding the effect of the jury=s
finding that GuideOne made an unconditional tender of $155,000 on July 7,
2005.  GuideOne contends that but for the
trial court=s erroneous decision to
disregard the finding, the statutory interest penalty would have ceased to
accrue on July 7, 2005, in the amount of $155,000.  GuideOne alternatively argues that FBCB is
not entitled to recover any statutory interest penalty whatsoever because FBCB
failed to secure a jury finding determining the statutory interest penalty=s
accrual date, which GuideOne argues is fifteen days after the insurer receives
all items, statements, and forms required to determine a final proof of
loss.  Assuming that FBCB is entitled to
recover a statutory penalty without having secured a finding of the accrual
date, GuideOne additionally argues that the accrual date is January 10, 2004,
not July 15, 2003, which is the accrual date that the trial court utilized in
computing the amount of the interest penalty.

 








A.     Article 21.55

Article 21.55 imposes requirements on an insurer
with respect to responding to claims, accepting or rejecting claims, and
promptly paying accepted claims.  See former
Tex. Ins. Code Ann. art. 21.55, '' 2,
3, 4; Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 16
(Tex. 2007).  Article 21.55 also
prescribes penalties for an insurer=s
noncompliance.  Tex. Ins. Code Ann. art.
21.55, ' 6;
Warrantech Corp. v. Steadfast Ins. Co., 210 S.W.3d 760, 769 (Tex. App.CFort
Worth 2006, pet. denied).  The purpose of
article 21.55 is to obtain prompt payment of claims pursuant to policies of
insurance, and its provisions are to be liberally construed to promote this
purpose.  Tex. Ins. Code Ann. art. 21.55,
' 8.








Specifically, article 21.55 mandates that an
insurer shall, not later than the fifteenth day after receipt of notice of a
claim, (1) acknowledge receipt of the claim, (2) commence any investigation of
the claim, and (3) request from the claimant all items, statements, and forms
that the insurer reasonably believes, at that time, will be required from the
claimant.  Id. ' 2(a).  An insurer shall notify a claimant in writing
of the acceptance or rejection of a claim not later than the fifteenth business
day after the insurer receives all relevant items, statements, and forms
required by the insurer in order to secure final proof of loss.  Id. ' 3(a).  If an insurer is unable to accept or reject
the claim within the period specified in section 3(a), the insurer must notify
the claimant not later than the period specified in section 3(a) and accept or
reject the claim not later than the forty-fifth day after the date the insurer
notified the claimant of its initial inability to accept or reject the
claim.  Id. ' 3(d),
(e).

Regarding damages, if an insurer delays payment
of a claim following its receipt of all items, statements, and forms reasonably
requested and required as provided under section two for more than sixty days,
the insurer shall pay damages as provided for in section 6 of article
21.55.  Id. ' 3(f).  Section 6 provides, AIn all
cases where a claim is made pursuant to a policy of insurance and the insurer
liable therefore is not in compliance with the requirements of this article,
such insurer shall be liable to pay the holder of the policy . . . 18 percent
per annum of the amount of such claim.@  Id. ' 6.  Accordingly, to successfully maintain a claim
under section 6, a party must establish (1) a claim under an insurance policy,
(2) that the insurer is liable for the claim, and (3) that the insurer has
failed to follow one or more sections of article 21.55 with respect to the
claim.  Allstate Ins. Co. v. Bonner,
51 S.W.3d 289, 291 (Tex. 2001); Protective Life Ins. Co. v. Russell, 119
S.W.3d 274, 286 (Tex. App.CTyler
2003, pet. denied).








B.      Unconditional Tender Finding

The trial court calculated the eighteen percent
interest penalty based on the entire amount of damages found by the jury for
GuideOne=s breach
of the insurance policyC$286,596.63Cbeginning
July 15, 2003 and running to March 9, 2007, the date of the judgment.  GuideOne argues that the trial court erred by
disregarding the effect of the jury=s
finding that it made an unconditional tender of $155,000 on July 7, 2005.  See Republic Underwriters Ins. Co. v.
Mex-Tex, Inc., 150 S.W.3d 423, 425B26 (Tex.
2004).  We agree.

A trial court may disregard a jury finding if
there is no evidence to support the jury=s
finding or if it is immaterial.  Se.
Pipe Line Co., Inc. v. Tichacek, 997 S.W.2d 166, 172 (Tex. 1999); Dunnagan
v. Watson, 204 S.W.3d 30, 39 (Tex. App.CFort
Worth 2006, pet. denied).  A no evidence
challenge may be sustained when the evidence establishes conclusively the
opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999). 
Anything more than a scintilla of evidence is legally sufficient to
support the finding.  Cont=l Coffee
Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Dunnagan,
204 S.W.3d at 40.








Under article 21.55, the amount of the Aclaim@ on
which a penalty is calculated is the amount ultimately determined to be owed to
the claimant, less any partial payments made. 
Mex-Tex, 150 S.W.3d at 426B28; Fire
Ins. Exchange v. Sullivan, 192 S.W.3d 99, 109 (Tex. App.CHouston
[14th Dist.] 2006, pet. denied).  Thus,
an insured is entitled to the penalty interest on the difference between the
amount of the claim as determined to be owed and the amount the insurer
unconditionally tendered.  Mex-Tex,
150 S.W.3d at 427B28.  Conversely, the interest penalty may be
assessed against the insurer on the full amount of the claim if an insurer=s
partial payment to the insured was not unconditional.

Here, the interest penalty could only have been
assessed against GuideOne on the full amount of the claim for the full period
of time used to calculate the penalty if there was no evidence to support the
jury=s
finding that GuideOne=s July 7, 2005 partial tender to
FBCB was unconditional.  GuideOne
included a check in the amount of $155,000 with its July 7, 2005 letter
addressed to FBCB=s attorney, which states in
pertinent part as follows:

This letter is written in response to your correspondence of June 17,
2005, in which you conveyed First Baptist Church of Bedford=s (AFBCB@) settlement offer
---------.  In response, GuideOne
offers $155,000.  This amount is
calculated as the Alike kind@ roof replacement
estimate from Precision Roofing, less depreciation and FBCB=s deductible, then adding
the current replacement cost of the R-19 insulation upgrade, and an additional
amount for attorney=s fees.

 








Tendered with this letter is GuideOne=s check . . ., in the
amount of $155,000.  This is an
unconditional tender of funds, although it represents an amount which
GuideOne believes is sufficient to extinguish its obligations to [FBCB].  Essentially, this amount represents the same
tender of funds originally made by GuideOne on December 26, 2003, as adjusted
for depreciation and the addition of an R-19 insulation upgrade at current
pricing.

 

In summary, it is GuideOne=s position that the funds tendered with this
letter are sufficient to address all of [FBCB=s] claims arising out of
the covered loss.  Regardless of
whether FBCB agrees with GuideOne=s position, these funds are tendered as
unconditional payment of the current undisputed amount of FBCB=s claim.  [Emphasis added.]

 

Although GuideOne stated that it was offering
$155,000 in response to FBCB=s June
17, 2005 settlement offer and that it opined that the amount was sufficient Ato
address all of [FBCB=s] claims arising out of the
covered loss,@ the letter goes on to clarify
twice that the $155,000 is an unconditional tender of funds, specifically
stating once that the $155,000 is payment of the Acurrent
undisputed amount of FBCB=s claim,@ thus
implicitly recognizing that there remained a disputed amount of money on the
claim, which had yet to be completely settled. 
This is not language supporting FBCB=s
interpretation that GuideOne intended the $155,000 to be conditional.  See Mex-Tex, 150 S.W.3d at 427
(holding that, for request to be conditional, the evidence must establish an
assent of the parties to an agreement that the amount paid by the debtor to the
creditor was in full satisfaction of the entire claim).  Rather, it is some evidence supporting the
jury=s
finding that GuideOne unconditionally tendered $155,000 to FBCB on July 7,
2005.  See id.













Citing information contained in an unredacted
version of the July 7, 2005 letter in the clerk=s
record, FBCB argues that the $155,000 was not an unconditional tender because
the amount was for less than the amount due according to GuideOne=s own
figures.  However, notwithstanding that
Defendant=s Exhibit 15ACwhich is
the redacted version of the July 7, 2005 letter entered into evidence and
considered by the juryCdoes not contain the information
FBCB refers to, GuideOne concluded in the unredacted version of the letter that
the Arevised
estimate total is $153,430.42,@ not
$189,895.30, as FBCB contends.  GuideOne
thus did not offer an amount less than what was due according to its own
figures.  Moreover, that GuideOne=s tender
of $155,000 on July 7, 2005, was for an amount less than that due on the claim
is not dispositive of whether the $155,000 was an unconditional tender because,
whether it was the need to include R-19 insulation or to replace the entire
roof instead of the top level only, the record demonstrates that GuideOne contested
some portion of FBCB=s claim throughout much of the
case; hence the divergent numbers.  The
same holds true for FBCB=s argument that the $155,000
amount was not unconditional because GuideOne continued to contest its
liability.  See id. at 426B28
(holding that insured was entitled to statutory penalty on difference between
amount of claim ($179,000) and payment tendered by insurer ($145,460), which
was less than amount claimed).  FBCB
further argues that the $155,000 was not an unconditional tender but an offer
to settle the claim because the $155,000 was not tendered before FBCB filed
suit.  But FBCB appropriately resolves
this argument against itself when it states earlier in its brief that A[a]n
unconditional tender can be made at any time, even when a case is on appeal.@

Because there is some evidence supporting the
jury=s
finding in response to question fifteen that GuideOne made an unconditional
tender of $155,000 on July 7, 2005, we hold that the trial court erred by
disregarding the effect of the jury=s
finding in calculating the article 21.55 interest penalty.








The supreme court has determined that Aa
settlement payment should be accredited first to accrued prejudgment interest
as of the date the settlement payment was made, then to >principal,= thereby
reducing or perhaps eliminating prejudgment interest from that point in time
forward.@  Battaglia v. Alexander, 177 S.W.3d
893, 908 (Tex. 2005); see also Brainard v. Trinity Universal Ins. Co.,
216 S.W.3d 809, 816 (Tex. 2006). 
Therefore, in calculating the amount of article 21.55 interest to be
awarded FBCB, we must determine the amount of prejudgment interest that had
accrued on FBCB=s breach of contract damages as
of July 7, 2005 (the date of GuideOne=s
tender), apply GuideOne=s $155,000 tender first to the
amount of prejudgment interest that had accrued as of July 7, 2005, next apply
any remaining balance to the principal ($286,596.63), and finally utilize the
revised principal figure to calculate the post-tender amount of the article
21.55 interest penalty.[3]








The amount of prejudgment interest[4]
that had accrued on FBCB=s breach of contract damages by
July 7, 2005 is $39,966.26.[5]  Applying GuideOne=s
$155,000 tender first to the $39,966.26 in interest that had accrued as of the
time of the tender results in an amount of $115,033.74 being applied next to
FBCB=s breach
of contract damages award (the principal), which equals a post-tender figure of
$171,562.89.  FBCB is thus entitled to
recover from GuideOne an interest penalty under article 21.55 of the insurance
code in the amount of $153,735.12.[6]  Accordingly, we sustain this part of GuideOne=s first
issue and render judgment that FBCB recover from GuideOne an interest penalty
under article 21.55 of the insurance code in the amount of $153,735.12.

C.     Accrual Date Arguments








We disagree with GuideOne=s
argument that FBCB is not entitled to recover any penalty interest because of
the absence of a jury finding determining the penalty=s
accrual date.  First, GuideOne=s
contention that the penalty interest Abegins
to accrue fifteen days after the insurer receives all items, statements and
forms required to determine a final proof of loss@ is
unsupported by the plain language of article 21.55 and is erroneous.  GuideOne is referencing the deadline in
section 3(a) that an insurer must meet when notifying a claimant of its
acceptance or rejection of a claim, not section 3(f), which provides that an
insurer shall pay damages as set forth in section 6 if it delays payment
of a claim for more than sixty days following its receipt of all items,
statements, and forms reasonably requested under section 2.  See Tex. Ins. Code Ann. art. 21.55, ' 3(a),
(f).








The evidence is undisputed that GuideOne never
requested from FBCB any items, statements, and forms required within fifteen
days of receiving FBCB=s notice of loss on April 30,
2003.  See id. ' 2(a).  This is so even considering GuideOne=s claim
log notes in light of section 2(b), which mandates that the insurer shall make
a record of the date, means, and content of the acknowledgment if acknowledgment
of the claim is not made in writing.  See
id. ' 2(b).  When facts are undisputed or conclusively
established, there is no need to submit those issues to the jury.  Sullivan v. Barnett, 471 S.W.2d 39, 44
(Tex. 1971); XCO Prod. Co. v. Jamison, 194 S.W.3d 622, 633 (Tex. App.CHouston
[14th Dist.] 2006, pet. denied).  This
rule applies even if the pleadings controvert the issue.  European Crossroads=
Shopping Ctr., Ltd. v. Criswell, 910 S.W.2d 45, 56 (Tex. App.CDallas
1995, writ denied).  Because the evidence
is undisputed that GuideOne failed to comply with section 2(a)=s
information request requirement, FBCB was not required to obtain a jury finding
determining when GuideOne, in compliance with section 2(a), received all items,
statements, and forms reasonably requested and required pursuant to section
3(f).[7]








GuideOne argues in its reply brief that it Amade a
written request on October 22, 2003 to complete its investigation of FBCB=s claim,
including taking core samples to determine the extent of the damage.@  It continues, AWhile
couched in polite terms, this letter nonetheless conveyed to FB[C]B the >items,
statements, and forms= GuideOne needed in order to
reach a decision on FBCB=s claim.@  We disagree with its argument because
GuideOne=s reason
for sending the letter was for a purpose other than what is relevant to this
issue.  GuideOne=s
assertion that its October 22, 2003 letter conveyed to FBCB the items,
statements, and forms needed Ato reach
a decision on FBCB=s claim@ is
inapposite in light of section 3(a)=s
revelation that the insurer shall notify the claimant in writing of its
acceptance or rejection of the claim within fifteen days after it receives the
items requested under section 2(a) Ain order
to secure final proof of loss.@  See Tex. Ins. Code Ann. art. 21.55, ' 3(a)
(emphasis added).  GuideOne=s letter
indicated that it wanted to take core samples of FBCB=s roof
to determine the extent of the damage to the roof.  Taking core samples of FBCB=s roof
may have been required to determine the extent of FBCB=s loss,
but it would not have been required to prove that FBCB in fact suffered a loss,
which, according to the plain language of section 3(a), is required for an
insurer to make its decision to accept or reject the claim.  See Colonial County Mut. Ins. Co. v.
Valdez, 30 S.W.3d 514, 523 (Tex. App.CCorpus
Christi 2000, no pet.) (holding that items requested by insurer were not
required to secure final proof of loss).








The record also belies GuideOne=s
assertion.  Stolowski prepared a Property
Captioned Report with an AAction Plan@ in late
September 2003Cweeks before GuideOne sent FBCB
the October 22, 2003 letterCstating
that she planned to seek approval to pay an amount equal to Precision=s
estimate of approximately $104,000, less depreciation.  It is more than reasonable to conclude that
Stolowski would not have sought approval to pay the claim if GuideOne had not
already Aaccepted@ FBCB=s claim
within the meaning of section 3(a). 
Accordingly, we overrule this part of GuideOne=s first
issue.

GuideOne alternatively argues that the trial
court should have determined that the interest under article 21.55 section 6
began to run on January 10, 2004Cfifteen
days after December 26, 2003, the date that GuideOne Adecided
and tendered the undisputed portion of FBCB=s claim,@Cinstead
of July 15, 2003.  GuideOne=s
reasoning is solely as follows: 

In response to Question
No. 14, the jury found that GuideOne=s December 26, 2003 tender of payment on FBCB=s claims was not
unconditional.  Impliedly, the jury=s finding means that
GuideOne was in a position to determine a final proof of loss on that
date.  Therefore, any interest penalty
would begin running fifteen days later, January 10, 2004 . . . .@

 

We disagree.

A jury=s
failure to find a particular fact merely means that the proponent failed to
meet its burden of proving the fact by a preponderance of the evidence.  C & R Transp., Inc. v. Campbell,
406 S.W.2d 191, 194 (Tex. 1966); Dunnagan, 204 S.W.3d at 40.  It does not mean the reverse of the failed
fact finding.  Dunnagan, 204
S.W.3d at 40.








The jury=s
finding in question fourteen that GuideOne did not unconditionally tender
$85,908.40 to FBCB on December 26, 2003, merely means that GuideOne did not
meet its burden of proving by a preponderance of the evidence that it
unconditionally tendered $85,908.40 to FBCB on December 26, 2003.  It does not mean or imply anything else,
including that GuideOne was in a position to determine a final proof of loss on
that date.  See Campbell, 406
S.W.2d at 194.  Accordingly, we overrule
the remainder of GuideOne=s first issue.

IV.  PREJUDGMENT INTEREST RATE

In its second issue, GuideOne argues that the
trial court reversibly erred by entering judgment that FBCB is entitled to
recover prejudgment interest at the rate of 8.25% on FBCB=s breach
of contract and article 21.21 awards.  Relying
on section 302.002 of the finance code, it contends that FBCB is entitled to
prejudgment interest at the statutory rate for contract claims, which is six
percent yearly for a breach of contract case in which no rate is specified in
the contract.

Section 302.002, which is located under
subchapter A of chapter 302, titled, AUsurious
Interest,@ provides as follows:








If a creditor has not agreed with an obligor to
charge the obligor any interest, the creditor may charge and receive from the
obligor legal interest at the rate of six percent a year on the principal
amount of the credit extended beginning on the 30th day after the date on which
the amount is due.

Tex. Fin. Code Ann. ' 302.002
(Vernon 2006).  ACreditor@ is
defined as a person who loans money or otherwise extends credit.  Id. ' 301.002(a)(3).  AObligor@ is
defined as a person to whom money is loaned or credit is otherwise
extended.  Id. ' 301.002(a)(13).  The definition of creditor does not include a
judgment creditor, and the definition of obligor does not include a judgment
debtor.  Id. ' 301.002(a)(3),
(13)(A).  A Ajudgment
creditor@ is a
person to whom a money judgment is payable, and a Ajudgment
debtor@ is a person
obligated to pay a money judgment.  Id.
' 301.002(a)(5),
(6).








Here, FBCB did not loan money or extend credit to
GuideOne, and GuideOne is not one to whom FBCB loaned money or extended
credit.  Rather, FBCB is one to whom a
money judgment is payable, and GuideOne is one obligated to pay a money
judgment.  Thus, as defined by section
301.002, FBCB is not a creditor and GuideOne is not an obligor.  We also note that the term Alegal
interest@ does
not include judgment interest, which is interestCas in
this caseCthat accrues on a money judgment
before, on, or after the date the judgment is rendered.  See id. ' 301.002(a)(7),
(8).  Section 302.002 thus does not apply
to this case.  See Smith v. Huston,
251 S.W.3d 808, 828 (Tex. App.CFort
Worth 2008, pet. denied); Lamajak, Inc. v. Frazin, 230 S.W.3d 786, 797B98 (Tex.
App.CDallas
2007, no pet. h.) (reasoning that trial court erred by awarding prejudgment
interest under section 302.002). 
Consequently, the trial court did not err by failing to calculate
prejudgment interest on FBCB=s breach
of contract and article 21.21 awards pursuant to section 302.002 of the finance
code.  We overrule GuideOne=s second
issue.

V.  JURY CHARGE ERROR

In its third issue, GuideOne argues that the
trial court abused its discretion by denying GuideOne=s
requested jury charge questions and instructions.  It challenges the trial court=s
submission of question numbers one, two, three, four, six, seven, ten, eleven,
and twelve.

A.     Standard of Review

A party is entitled to a jury question, instruction,
or definition that is raised by the pleadings and evidence.  Tex. R. Civ. P. 278; Union Pac. R.R. Co.
v. Williams, 85 S.W.3d 162, 166 (Tex. 2002).  This is a substantive, nondiscretionary
directive to trial courts, requiring them to submit requested questions to the
jury if the pleadings and any evidence support them.  Elbaor v. Smith, 845 S.W.2d 240, 243
(Tex. 1992).








The trial court has broad discretion in
submitting jury questions so long as the questions submitted fairly place the
disputed issues before the jury.  TXI
Transp. Co. v. Hughes, 224 S.W.3d 870, 900 (Tex. App.CFort
Worth 2007, pet. granted).  This broad
discretion is subject only to the limitation that controlling issues of fact must
be submitted to the jury.  Id.; see
also Tex. R. Civ. P. 278.  Rule 277
also affords the trial court considerable discretion in deciding what
instructions are necessary and proper.  State
Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451B52 (Tex.
1997).  Indeed, a trial court is afforded
even more discretion when submitting instructions than when submitting
questions.  Wal-Mart Stores, Inc. v.
Middleton, 982 S.W.2d 468, 470 (Tex. App.CSan
Antonio 1998, pet. denied).

The standard of review for error in the jury
charge is abuse of discretion, which occurs only when the trial court acts
arbitrarily, unreasonably, or without reference to guiding rules or
principles.  In re V.L.K., 24
S.W.3d 338, 341 (Tex. 2000); Aquamarine Operators, Inc. v. Downer, 701
S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).  We will not
reverse a judgment based on charge error in the absence of harm, which results
if the error Aprobably caused the rendition of
an improper judgment@ or Aprobably
prevented the appellant from properly presenting the case to the court of
appeals.@  Tex. R. App. P. 44.1; Tex. Disposal Sys.
Landfill, Inc. v. Waste Mgmt. Holdings, Inc., 219 S.W.3d 563, 580 (Tex.
App.CAustin
2007, pet. denied).








B.      Question Number Three

Question number three asked the jury whether
GuideOne engaged in any unfair or deceptive act or practice that caused damage
to FBCB.  GuideOne complains about five
of the eight alternative definitions attributed to the term Aunfair
or deceptive act or practice.@

Alternative definition number two provides that Aunfair
or deceptive act or practice@ means A[f]ailing
to attempt in good faith to effectuate a prompt, fair, and equitable settlement
of a claim when the insurer=s
liability has become reasonably clear.@  Without any explanation, GuideOne contends
that the portion of the definition stating Awhen the
insurer=s
liability has become reasonably clear@ is a
comment on the weight of the evidence.

The evidence shows that the parties disputed the
need to upgrade to R-19 insulation. 
However, the evidence also shows that GuideOne became aware of the need
to include R-19 insulation as early as March 2004.  GuideOne had estimates from Precision and
Year Around in late summer 2003. 
Stolowski agreed that as of the summer of 2004, the claim should Ahave
been paid a long time ago.@  In light of this evidence, we hold that the
trial court did not abuse its discretion by including this alternative
definition.[8]








Alternative definition number three provides that
Aunfair
or deceptive act or practice@ means A[f]ailing
to provide promptly to [FBCB] a reasonable explanation of the factual and legal
basis in the policy for an insurer=s denial
of the claim [or the insurer=s offer
of a compromise settlement of the claim].@  GuideOne argues that the portion of the
definition regarding an insurer=s denial
of the claim is not supported by the evidence because the evidence showed that
GuideOne never denied the claim. 
GuideOne is correct that it never denied the claim as a whole, but it
contested the need to upgrade to R-19 insulation after FBCB notified it that
the City of Bedford required the upgrade. 
The record demonstrates that it was not until May 17, 2004, that
GuideOne notified FBCB by letter of its opinion that the R-19 insulation was
required for residential dwellings, not commercial.  The definition is also set forth in the
conjunctive, which allowed the jury to consider that Aunfair
or deceptive act or practice@ meant
GuideOne=s
failure to promptly provide a reasonable explanation of the basis for its
settlement offer.  The trial court did
not abuse its discretion by including this alternative definition.








Alternative definition number five provides that Aunfair
or deceptive act or practice@ means A[t]rying
to enforce a full and final release of a claim by [FBCB], when only a partial
payment had been made, unless the release was for a doubtful or disputed claim.@  GuideOne states that this definition is not
supported by the evidence.  The record,
however, demonstrates that FBCB construed GuideOne=s
December 26, 2003 letter, which did not include the cost for the R-19
insulation upgrade, as a settlement offer.  GuideOne=s offer
to replace the roof at the April 2004 meeting with FBCB also did not include
the cost for the R-19 insulation upgrade, but GuideOne nonetheless provided a
release at the meeting for FBCB=s
signature if FBCB accepted GuideOne=s
offer.  We hold that the trial court did
not abuse its discretion by including this alternative definition.








Alternative definition number one provides that Aunfair
or deceptive act or practice@ means A[m]isrepresenting
to a claimant a material fact or policy provision relating to the coverage at
issue.@  GuideOne contends that no evidence supports
this definition.  Alternative definition
number seven provides that Aunfair
or deceptive act or practice@ means A[f]ailing
to attempt in good faith to effectuate a prompt, fair, and equitable settlement
under one portion of the policy of the claim with respect to which the insurer=s
liability has become reasonably clear in order to influence the claimant to
settle an additional claim under another portion of the coverage.@  GuideOne contends that this definition is contrary
to the great weight of the evidence. 
GuideOne does not explain why the inclusion of these definitions
probably caused the rendition of an improper verdict.  Assuming without agreeing that the trial
court abused its discretion by including these alternative definitions and
having reviewed the entire record, we hold that the error, if any, was
harmless.  We overrule this part of
GuideOne=s third
issue.

C.     Question Number Four

Question number four asked whether GuideOne Aengage[d]
in any false, misleading, or deceptive act or practice which was a producing
cause of damages to [FBCB].@  GuideOne argues that this question is
duplicative of question number three, which inquired into any Aunfair
or deceptive act or practice.@  But question number four instructs the jury
that Afalse,
misleading, or deceptive act or practice@ only
means A[r]epresenting
that an agreement confers or involves rights, remedies, or obligations which it
does not have or involve, or which are prohibited by law.@  Question number three does not include this
as an alternative definition to the phrase Aunfair
or deceptive act or practice.@  Therefore, the questions inquire into
different conduct and are not duplicative. 
We hold that the trial court did not abuse its discretion by submitting
this question.  We overrule this part of
GuideOne=s third
issue.








D.     Question Number Six

Question number six asked the jury to determine
what sum of money, if any, Awould
fairly and reasonably compensate [FBCB] for its damages, if any, that resulted
from any such conduct found by you in [your] answer to Question Nos. 3, 4, or
5?@  The question instructed the jury to consider A[t]he
reasonable and necessary cost to replace the metal roof decking@ as the
element of damages, if any.  GuideOne
first complains that the question contains an improper condition precedent
because it is conditioned on two duplicative questionsCquestion
numbers three and four.  We already
determined above, however, that the trial court did not abuse its discretion by
submitting question number four.








GuideOne also contends that the question should
have included the phrase Awith one of like kind and
quality@ just
because this is the language found in the policy.  But as FBCB responds, question number six
inquired about damages relating to FBCB=s
article 21.21 damagesCa different claim than FBCB=s claim
for breach of the insurance policy, which allowed GuideOne to repair, rebuild,
or replace the property with other property of like kind and quality.  In any event, we cannot say that the
exclusion of the phrase Aof like kind and quality@ was
reversible error in part because the instruction nonetheless limited the jury
in the costs that it could consider in replacing the metal roof decking to only
those costs that were Areasonable and necessary.@  We overrule this part of GuideOne=s third
issue.

E.      Question Number Seven

Question number seven asked whether GuideOne
engaged in any of the conduct described in questions three, four, or five knowingly.  Again, GuideOne argues that the trial court
erred by submitting this question because it was conditioned on duplicative
question numbers three and four.  We
determined above that the trial court did not abuse its discretion by
submitting question number four in addition to question number three.  We overrule this part of GuideOne=s third
issue.

F.      Question Numbers Ten, Eleven, and Twelve








GuideOne argues that the trial court erred by
submitting question numbers ten, eleven and twelve and that, assuming
submission of question number ten was proper, the jury=s
finding in response to question number ten irreconcilably conflicts with its
finding in response to question number six. 
Question numbers ten, eleven, and twelve covered FBCB=s breach
of good faith and fair dealing claim. 
The jury found in response to question nine that GuideOne had failed to
comply with its duty of good faith and fair dealing to FBCB, found in response
to question ten that $30,000 would fairly and reasonably compensate FBCB for
its damages proximately caused by the breach, found in response to question
eleven that GuideOne was actually aware that its actions involved a high degree
of probability of financial ruin to FBCB, and found in response to question
twelve that $55,000 should be awarded to FBCB as exemplary damages for GuideOne=s
conduct found in question eleven.  The
record shows that FBCB did not move for judgment based on the jury=s
answers to question numbers ten, eleven, and twelve; the judgment awards FBCB
amounts for its breach of contract and article 21.21 claims, for interest under
article 21.55, for attorney=s fees,
for prejudgment and postjudgment interest, and for costs.  We hold that error, if any, in question
numbers ten, eleven, and twelve was harmless because the trial court did not
enter judgment based on the jury=s
findings to those questions.  See
Tracy v. Annie=s Attic, Inc., 840
S.W.2d 527, 538 (Tex. App.CTyler
1992, writ denied) (AWe are of the opinion that since
no judgment was rendered by the court based on jury findings in questions one
and two that any error in those questions was harmless.@).  Any error stemming from an alleged
irreconcilable conflict between question numbers six and ten is harmless for
the same reason.  We overrule these parts
of GuideOne=s third issue.

G.     Question Number One








Question number one asked the jury whether
GuideOne failed to comply with the insurance policy issued to FBCB, and it
instructed the jury that GuideOne=s
failure to comply was excused by FBCB=s
previous failure Ato permit [GuideOne] to take
samples of damaged and undamaged property for inspection, testing, and analysis@ or Ato
provide GuideOne with all items, statements, and forms required in order to
secure final proof of loss.@  Although GuideOne initially argued that
question number one should have been conditioned on certain factors and
preceded by certain questions, GuideOne has since waived its challenges to
question number one, conceding that FBCB is correct that GuideOne waived its
complaints regarding the breach of contract question by entering into a rule 11
agreement unconditionally paying the $286,596.63 breach of contract damages
while reserving the right to appeal the prejudgment interest on those
damages.  GuideOne has consequently
abandoned its challenge to jury question number one.

H.     Question Number Two








If the jury answered yes to question number one,
then it was instructed to answer question number two, which asked what sum of
money would fairly and reasonably compensate FBCB for its damages resulting
from the conduct found by the jury in question number one.  It instructed, ADo not
speculate about what a party=s
ultimate recovery may or may not be.  Any
recovery will be determined by the Court when it applies the law to your
answers at the time of judgment.@  GuideOne argues that the speculation
instruction is appropriate for DTPA damages only, not for Aactual
damages.@  As stated above, however, GuideOne abandoned
its challenges to question number one. 
Because question number two inquires about damages related to the jury=s
affirmative finding in question number one, we hold that GuideOne=s
argument complaining of question number two is subsumed in GuideOne=s waiver
of its challenges to question number one. 
We overrule the remainder of GuideOne=s third
issue.

                                      VI.  MOTION FOR NEW TRIAL

In its fourth issue, GuideOne argues that the
trial court abused its discretion by denying its motion for new trial.  GuideOne relies on the identical arguments
set forth above as the bases for the trial court=s abuse
of discretion.  With the exception of our
sustaining part of GuideOne=s first
issue regarding whether GuideOne unconditionally tendered $155,000 to FBCB on
July 7, 2005, we have resolved the remainder of GuideOne=s
arguments against it.  Accordingly, we
overrule GuideOne=s fourth issue.

                                             VII.  CONCLUSION

Having sustained part of GuideOne=s first
issue, we modify that part of the trial court=s
judgment awarding FBCB a statutory interest penalty under article 21.55 of the
insurance code in the amount of $188,398.71 to award FBCB a statutory interest
penalty under article 21.55 in the amount $153,735.12.  See Tex. R. App. P. 43.2(b).

 








Having overruled the remainder of GuideOne=s
issues, we affirm the trial court=s
judgment as modified.

 

DIXON
W. HOLMAN

JUSTICE

 

PANEL:  CAYCE, C.J.; HOLMAN and
WALKER, JJ.

CAYCE, C.J. concurs without opinion.

DELIVERED:  October 2, 2008











[1]See Act of May 27, 1991, 72nd
Leg., R.S., ch. 242, ' 11.03, 1991 Tex.
Gen. Laws 939, 1043B45, repealed by
Act of May 22, 2003, 78th Leg., R.S., ch. 1274, ' 26(a)(1), 2003 Tex.
Gen. Laws 3611, 4138 (current version at Tex. Ins. Code Ann. '' 542.051B.061 (Vernon 2007)).  Article 21.55 was repealed and recodified
effective April 1, 2005.  However,
because former article 21.55 is applicable to this case, we will hereafter
refer to the pertinent sections as they were previously codified.





[2]The jury also awarded
FBCB $12,000 for an appeal to the court of appeals and $5,000 for an appeal to
the supreme court of Texas.





[3]FBCB contends in its
motion for rehearing that in addition to determining the amount of prejudgment
interest that had accrued as of July 7, 2005, we should also determine the
amount of the article 21.55 statutory interest penalty that had accrued as of July
7, 2005, and apply the $155,000 tender to that amount too.  It contends that applying the Adeclining principal@ formula Alikewise satisfies the
purpose of the 18% interest allowed under [former article 21.55 of the
insurance code].@  FBCB, however, directs us to no authority
indicating that the Adeclining principal@ formula is applicable to
an 18% statutory interest penalty under former article 21.55, and we decline at
this time to expand upon the scope of the supreme court=s application of the formula
as set forth in Battaglia and Brainard.





[4]Because we overrule
GuideOne=s argument that the trial
court reversibly erred by entering judgment that FBCB is entitled to recover
prejudgment interest at the rate of 8.25% on FBCB=s breach of contract and
article 21.21 awards, infra, we will use the 8.25% figure in calculating
prejudgment interest.





[5]This amount is calculated
as follows:

 

$8.25% of $286,596.63 from 10/28/2003 (180 days
after written notice of the claim) to 10/27/2004 = $23,644.22

 

$8.25% of $286,596.63 from 10/28/2004 to 7/6/2005
(252 days) = $16,322.04

 

Total: $39,966.26





[6]This amount is calculated
as follows:

 

$18% penalty on $286,596.63 

from 7/15/2003 to 7/14/2004 = $51,587.39

 

$18% penalty on $286,596.63

from 7/15/2004 to 7/6/2005 (357 days)= $50,454.81

 

$18% penalty on $171,562.89

from 7/7/2005 to 7/6/2006 = $30,881.32

 

$18% penalty on $171,562.89

from 7/7/2006 to 3/9/2007 (246 days) = $20,811.60

 

Total: $153,735.12





[7]Furthermore, the trial
court selected July 15, 2003, as the accrual date, which was the next day after
seventy-five days from the date that FBCB notified GuideOne of its claim and,
in light of GuideOne=s failure to request all
items, statements, and forms from FBCB, the latest date under the deadlines set
forth in article 21.55 for determining the interest penalty.  See Tex. Ins. Code Ann. art. 21.55, '' 3(f) (setting forth
sixty-day delay period), 5(d) (extending claim-handling deadlines an additional
fifteen days in the event of a weather-related catastrophe); Munoz v. State
Farm Lloyds, No. Civ.A. B-04-141, 2006 WL 1169145, at *4 (S.D. Tex. May 2,
2006) (declining to alter or amend article 21.55 award based in part on lack of
jury question inquiring into penalty=s accrual date because the trial court Autilized the latest
possible date on which the jury could have based its finding that the
Plaintiffs fulfilled all of their conditions precedent under the contract.@); State Farm Life
Ins. Co. v. Martinez, 216 S.W.3d 799, 802 (Tex. 2007) (AState Farm received Toni=s claim on September
11th, so the 60-day period elapsed on November 10th.@).





[8]See also Coats v. Ruiz, 198 S.W.3d 863, 880
(Tex. App.CDallas 2006, no pet.)
(reasoning that an insurer breaches its common law duty of good faith and fair
dealing by denying a claim when the insurer=s liability has become reasonably clear).