COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



No. 08-24-00009-CV

Pamela Adams and Susan Leahy Shaner, Appellants

v.

Southwest Studio Corporation, Carl Graves, and Lona Diane Graves, Appellees

On Appeal from the 384th Judicial District Court
El Paso County, Texas
Trial Court No. 2014DCV0484

## MEMORANDUM OPINION

This suit arose from a failed 2008 contract to buy an undeveloped lot in Horizon City (the property). Appellants Pamela Adams and Susan Leahy Shaner, the would-be sellers, asserted various claims against Appellees Southwest Studio Corporation, Carl Graves, and Lona Diane Graves, the would-be buyers, who asserted counterclaims in response. The case was tried to a jury, which returned a verdict for Appellees. The trial court entered a judgment awarding Appellees $140,424.74. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual background

In 2007, Carl Graves wrote a letter to Joseph Shaner expressing an interest in buying the

property, an unimproved lot owned by Shaner and his wife, Marguerite. Though it turned out the Shaners were already deceased, Pamela Adams, their daughter, responded to the letter. After Adams visited the property with Carl and Diane Graves, the parties entered into a one-page contract under which Adams agreed to sell the property to the Graveses for $12,000. In the contract, Adams warranted that she had good title in the property and the capacity to sell it. She received $100 in earnest money. The parties disagree about whether Carl Graves informed Adams that he intended to install utilities on the property, find a buyer, and then close on both sales together. Appellees say he did; Appellants say he did not.

After the contract was signed, Carl Graves began improving the property, including clearing the lot and installing a septic system. At some point, Adams disclosed that she owned only a half interest in the property, and the other half belonged to her brother. The contract did not close, and Adams and Susan Shaner[1] eventually sold the property to someone else for $21,000, without compensating the Graveses for the improvements.

### B. Procedural background

#### (1) The 2010 suit

In 2010, the Graveses filed suit against Adams in justice court, asserting a claim for breach of contract, i.e., failure to sell land when promised and failure to return money and expenses. After a bench trial in October 2011, the Graveses were awarded $100 in damages.

#### (2) The 2014 suit

Based on Southwest Studio Corporation's[2] filing of a materialman's lien in connection with installation of the septic system and other improvements, Adams and Shaner filed this suit in district court in 2014 against the Graveses and Southwest Studio. Adams and Shaner subsequently filed notices of lis pendens on five properties in Horizon City, referencing this suit.

---

[1] Shaner is Adams's sister-in-law, who inherited the other half interest in the property from Adams's brother.

[2] Southwest Studio Corporation was an entity through which Carl and Diane Graves acquired and developed small tracts of land.

2

### (a) The pleadings

Adams and Shaner asserted claims for unenforceable agreement—no meeting of the minds, unenforceable agreement—public policy, unenforceable agreement—unconscionability, unenforceable agreement—lack of mutual assent, conversion, fraud by misrepresentation and/or inducement, fraud by nondisclosure, appropriation by theft, deceptive trade practices, fraud in a real estate transaction, negligence and/or gross negligence, and fraudulent lien.

In their original answer, filed in 2014, Appellees asserted a general denial and a counterclaim and motion for sanctions seeking fees, costs, and expenses.

In their second amended answer, filed in 2016, Appellees asserted a general denial, various affirmative defenses, and counterclaims for theft, fraud in a real estate transaction, fraud in the inducement, breach of contract, fraud, fraudulent misrepresentation, unjust enrichment, and quantum merit. In the statement of facts for these counterclaims, Appellees alleged that Adams had signed a contract to sell the property, had been informed it would be resold to a third party at closing, and did not object when informed that a septic system would be installed in the meantime. Appellees further alleged that after the septic system was installed, Adams ignored all requests that she take steps to clear title and close and instead sold the property to someone else. Later in 2016, Appellees nonsuited with prejudice all counterclaims asserted in their second amended answer.

In their sixth amended (live) answer, filed in 2019, Appellees asserted a general denial, verified denials, various affirmative defenses, and counterclaims for fraudulent lien and fraud. In the statement of facts for these counterclaims, Appellees alleged that Appellants filed notices of lis pendens on five properties not involved in the litigation. Appellees alleged that these notices were invalid and fraudulent for several reasons, including that they were "filed in bad faith in an illegal attempt to secure a possible award of money damages."

In their second amended (live) petition, filed in 2020, Appellants re-asserted the claims set forth in their original petition, asserted various affirmative defenses and special exceptions to the

counterclaims in Appellees' sixth amended answer, and noted they were also filing a "Notice of Withdrawal of Nonsuit" purporting to withdraw a 2019 nonsuit of all of Shaner's claims with prejudice.

### (b) The trial

In 2023, the case was tried to a jury. The charge included liability questions on six of Adams's claims[3] (conversion, fraud by misrepresentation and/or inducement, fraud by nondisclosure, fraud in a real estate transaction, negligence and/or gross negligence, and fraudulent lien), and three of Appellees' counterclaims (two of their five fraudulent lien counterclaims and their fraud counterclaim). The charge also included attorney's fees questions for each side.

The jury found Appellees not liable under any of the theories submitted against them and Adams liable under all theories submitted against her. The trial court entered a judgment in accordance with the verdict, awarding Appellees $140,424.74, including $10,000 in statutory damages for each of the two fraudulent lien counterclaims, $20,000 in damages for fraud, $93,100 in attorney's fees, and $7,324.74 in prejudgment interest. Appellants filed motions to disregard jury findings, for judgment notwithstanding the verdict, to modify the judgment, and for new trial, all of which were overruled by operation of law. This appeal followed.

## II. ISSUES ON APPEAL

In stating their issues on appeal, Appellants list seven "legal errors" by the trial court:

1. Legal Error No. 1: Whether the Trial Court should have disregarded the jury's findings, and signed a judgment notwithstanding the verdict.

2. Legal Error No. 2: Whether the Trial Court should have disregarded the jury's findings, and entered a judgment for Appellants.

3. Legal Error No. 3: Whether the Trial Court should have modified, corrected and/or reformed the Final Judgment.

---

[3] The styles of both the jury charge and the judgment include only one plaintiff, Pamela Adams, and the bodies of both documents likewise refer by name only to Adams and not Shaner, and mostly use the singular terms "plaintiff" and "counter-defendant." In contrast, the style and body of the live petition name both Adams and Shaner as plaintiffs and counter-defendants. In addition, counsel for Adams and Shaner referred to "plaintiffs," not "plaintiff," in closing argument (counsel for the defendants used both terms. And while Shaner did not attend the trial, Adams testified she was still a party to the suit.

4

4. Legal Error No. 4: Whether the Trial Court should have granted a new trial in the interest of justice and fairness.

5. Legal Error No. 5: Whether the Trial Court committed legal error in ordering that Defendant Carl Graves . . . may recover any amounts herein, in view of the Suggestion of Death filed on behalf of Carl.

6. Legal Error No. 6: Whether the Trial Court committed legal error in totally disregarding the interests and rights of Plaintiffs . . ., concerning the causes of action raised and asserted in "Plaintiffs' Second Amended Petition, Request For Declaratory Relief, And Request For Permanent Injunction, And Counter-Defendants' First Amended Answer" ("SAP").

7. Legal Error No. 7: Whether the Trial Court committed legal error in totally disregarding the interests and rights of Plaintiff Shaner, in view of Shaner's "Notice Of Withdrawal Of Nonsuit With Prejudice Of Susan Leahy Shaner," filed on March 2, 2020.

In their argument, Appellants group their contentions under the following headings, tracking the jury's findings against them:

a. Lis Pendens on Lot 3, Block 370, Unit Fifty;

b. Lis Pendens on Lot 8, Block 562, Unit Seventy-One;

c. Alleged Damages for Fraud;

d. Award of Attorney's Fees to Defendants;

e. Award of Pre-Judgment Interest to Defendants

f. Award of Total Judgment Amount to Defendants; and

g. Denial of Plaintiffs' Causes of Action.

## III. STANDARD OF REVIEW

Appellants argue that the trial court erred in denying their post-trial motions to disregard jury findings, for judgment notwithstanding the verdict, to modify the judgment, and for new trial. All trial court rulings on motions requesting rendition of judgment as a matter of law are governed by the same standard, under which we credit evidence favoring a jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not, viewing the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in the nonmovant's favor, and resolving any doubts against the movant. *Guajardo v. Hitt*, 562 S.W.3d 768, 775 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *Cent. Ready Mix Concrete*

*Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

In contrast, a trial court's ruling on a motion for new trial is reviewed for an abuse of discretion. *B. Gregg Price, P.C. v. Series 1–Virage Master LP*, 661 S.W.3d 419, 423 (Tex. 2023). A trial court abuses its discretion if it rules without reference to guiding rules or principles. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

Any questions of law decided by the trial court are reviewed de novo. *Guajardo*, 562 S.W.3d at 775 (citing *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994)).

## IV. ANALYSIS

### A. Briefing deficiencies and waiver

Appellees contend that Appellants have "globally waived all arguments through lack of adequate briefing," including "failure to clearly identify specific legal issues, failure to cite to the record, failure to cite authorities, failure to identify and apply the appropriate standards of review, and failure to develop substantive legal arguments."

The Supreme Court of Texas has recognized that "[f]ailure to provide citations or argument and analysis as to an appellate issue may waive it." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015); *see also* Tex. R. App. P. 38.1(i). But it has also instructed the courts of appeals to "construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004). We thus refrain from finding that waiver has occurred if a reasonable and liberal construction of the rules allows us to reach the merits. *See, e.g.*, *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 820 (Tex. App.—El Paso 2019, no pet.) (reaching merits despite deficient briefing).

Under Texas Rule of Appellate Procedure 38.1(f), an appellant's brief "must state concisely all issues or points presented for review," which are "treated as covering every subsidiary question

6

that is fairly included." Tex. R. App. P. 38.1(f). In addition, under Rule 38.1(i), an appellant's brief must present "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). If a brief requires the reviewing court to "speculate or guess" what contentions are being made, the brief fails. *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.). Further, the "[m]ere uttering of brief, conclusory statements unsupported by citation to legal authorities does not satisfy briefing requirements." *In re A.N.G.*, 631 S.W.3d 471, 476 (Tex. App.—El Paso 2021, no pet.).

As a reviewing court, "we have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Martinez v. Ward*, 303 S.W.3d 326, 328 (Tex. App.—El Paso 2009, no pet.) (internal quotation marks omitted). Nor is it appropriate for us to "attempt to re-draft and articulate" what we believe a party intended to say. *Id.* "Our role is that of a neutral adjudicator, and independent review impermissibly abandons that role for advocacy." *Nevarez as Tr. of 1010 S. Oregon Family Tr. v. City of El Paso*, No. 08-22-00061-CV, 2023 WL 3325197, at *8 (Tex. App.—El Paso May 9, 2023, no pet.) (mem. op.). With these guidelines in mind, we turn to Appellants' issues and arguments.

### B. Damages awarded to Carl Graves and constitutional matters

While Appellants' statement of issues lists seven "legal errors," the fifth one—whether the trial court erred in awarding Carl Graves damages despite his death—is not mentioned elsewhere in Appellants' brief. We conclude that this matter has been waived.[4] *See* Tex. R. App. P. 38.1(i)

---

[4] Moreover, the trial court awarded no amount to Carl Graves individually, and instead made collective awards to "Defendants/Counter-Plaintiffs," thereby avoiding any error that might arguably have resulted from an individual award to a deceased person. *See Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 612 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) ("It is of no concern of [defendant] how the various [plaintiffs] divide up the money, or if they should get into litigation among themselves over such division.") (citing *Lewis v. Hall,* 271 S.W.2d 447, 451 (Tex. App.—Fort Worth 1954, writ ref'd n.r.e.); *id.* ("The [judgment] resolves appellee's liability on the appellants' joint claims. How much each plaintiff receives in what capacity may be resolved by interpleader or in another forum; it should not interfere with the enforceability of the judgment."); *see also Bexar Cnty. Ice Cream Co. v. Swensen's Ice Cream Co.*, 859 S.W.2d 402, 405 (Tex. App.—San Antonio 1993, writ denied), *overruled on other grounds*, *Barraza v. Koliba*, 933 S.W.2d 164, 167–68 (Tex. App.—San Antonio 1996, writ denied) ("The manner of dividing the judgment proceeds among the plaintiffs will be their concern only. Appellants cite no authority why this issue would warrant a reversal of the judgment.").

("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

In addition, Appellants include in their "preliminary statement" the following assertion:

> The Judgment is clearly erroneous, constitutes legal error, and/or an abuse of discretion, and contrary to the principles of equity and good conscience, and effectively constitutes an unlawful taking under the constitution of the State of Texas, and the denial of Appellants' substantive and procedural due process rights, and the denial to Appellants of a fair opportunity to appear and defend their interests.

These matters, too, are not mentioned elsewhere in Appellants' brief and thus are waived. *See A.N.G.*, 631 S.W.3d at 476 ("Mere uttering of brief, conclusory statements unsupported by citation to legal authorities does not satisfy briefing requirements."); *Bolling*, 315 S.W.3d at 896 ("References to sweeping statements of general law are rarely appropriate.").

### C. Fraudulent lien and fraud counterclaims

Appellants assert several challenges relating to Appellees' fraudulent lien and fraud counterclaims. We consider each challenge in turn.

### (1) Nonsuit

Appellants contend that Appellees' fraudulent lien and fraud counterclaims were waived because all counterclaims asserted in Appellees' second amended answer were nonsuited with prejudice. In their brief, Appellants repeat the following argument for each of the three counterclaims:

> On December 21, 2016, [Appellees] filed their [nonsuit of counterclaims] therein expressly nonsuiting 'with prejudice all counterclaims asserted in Defendants' Second Amended Answer, Affirmative Defenses, Counter-Claims filed herein.' [record references].

> Said Nonsuit was never withdrawn, and therefore [Appellees] waived their right to any recovery on [their counterclaims on fraudulent liens and fraud].

This argument is both conclusory and unsupported by citation to legal authority, and thus waived. Moreover, the nonsuit filed by Appellees was expressly limited to "counterclaims asserted in [Appellees'] Second Amended Answer[.]" Those counterclaims—for theft, fraud in a real estate

8

transaction, fraud in the inducement, breach of contract, fraud, fraudulent misrepresentation, unjust enrichment, and quantum meruit—were based on Adams's alleged refusal to "clear the title and to close on the [2008 contract]." In contrast, the counterclaims submitted to the jury involved different alleged facts. That is, these later counterclaims for fraudulent lien and fraud were not based on Adams's alleged refusal to convey the lot under the 2008 contract, but rather on Adams and Shaner's filing of five allegedly fraudulent liens on other properties in 2014. On its face, Appellees' nonsuit did not extend to new counterclaims asserted in subsequent pleadings.

We also note that Appellants did not object to inclusion of Appellees' fraudulent lien counterclaims in the jury charge on the basis that they had purportedly been nonsuited. *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 919–20 (Tex. 2015) ("[T]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling."); *see also* Tex. R. Civ. P. 272 ("[O]bjections [to the jury charge] shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived.").[5]

### (2) Objection

Appellants contend that they timely objected on various grounds to the inclusion of Appellees' fraudulent lien and fraud counterclaims in the jury charge. Their entire argument as to the objections regarding the fraudulent liens reads:

> On October 20, 2023, Plaintiffs and Counter-Defendants Adams and Shaner timely filed their "Plaintiffs' Objections To Defendants' Second Amended Proposed Jury Charge" ("Objection"), therein stating Adams and Shaners' "Objection Two: Lis Pendens One" (Objection, Pages 1–4), regarding subject Lis Penden On Lot 3, Block 370, Horizon City (Unit Fifty) (AAPB–1:340–343) (AAPB–1:323), on the basis that: [three pages of objections quoted in full].[6]

---

[5] We do not address or consider the notion of trial by consent, as neither party raises it.

[6] The corresponding argument regarding the Lis Pendens on Lot 8, Block 562, Horizon City (Unit Seventy-One)

And their entire argument as to the objection regarding the fraud counterclaim reads:

> On October 20, 2023, Adams and Shaner timely filed their Objection, therein stating Adams and Shaners' "Objection Seven: Fraud-Defendants' Counter-Claims" (Objection, Page 14), regarding subject, on the basis that subject NONSUIT therein expressly nonsuited "with prejudice all counterclaims asserted in Defendants' Second Amended Answer, Affirmative Defenses, Counter-Claims filed herein." (RR–8(A):314–317) (AAPB–1:329–330).

These arguments are both conclusory and unsupported by citation to legal authority, and thus waived. Moreover, Appellants do not contend that they brought their objections to the trial court's attention or obtained a ruling. As a result, no error, if any, has been preserved. *See Wackenhut*, 453 S.W.3d at 919–20 (to preserve charge error, party must make trial court aware of error and obtain a ruling).

### (3) Directed verdict

Appellants contend that "[u]pon information and belief," they were granted a directed verdict with respect to the two fraudulent lien counterclaims submitted to the jury because "[Appellees] do not and/or did not have an ownership or title interest in the real property [involved]," and thus "do not have the right or standing to assert a lis pendens claim for a fraudulent lien." However, the trial judge made the opposite ruling, telling Appellants' counsel, "Well, your motion for directed verdict on those two [fraudulent lien counterclaims] is denied." Moreover, a person need not possess "an ownership or title interest" to bring a fraudulent lien claim; persons entitled to bring such a claim also include "[an] obligor or debtor." Tex. Civ. Prac. & Rem. Code Ann. § 12.003(a)(8).

### (4) Res judicata and collateral estoppel

In addition, Appellants contend that Appellees' fraud counterclaim is barred by res judicata, pointing to the 2010 justice court suit in which Appellees prevailed against Adams on a breach-of-contract claim:

---

contains no substantive differences.

Under the legal principal of Res Judicata, [Appellees] were precluded herein from re-litigating the issue of Fraud, since [they] had an opportunity to raise and litigate (or with the use of diligence, should have raised and litigated) said issue in the previous action in the Justice And Small Claims Court of El Paso County, Texas, Justice Precinct No 6, Place 2.[7]

However, the judgment in the justice court suit was signed on October 4, 2011. Thus, this earlier suit provided Appellees no "opportunity to raise and litigate" their fraud counterclaim, which was based on the filing of five notices of lis pendens by Appellants in 2014, three years later. *See Steelhead Midstream Partners, LLC v. CL III Funding Holding Co., LLC*, 709 S.W.3d 605, 608 (Tex. 2024) ("[R]es judicata prohibits follow-on litigation of claims that were or could have been decided in a prior action.").

Further, under Texas Civil Practice and Remedies Code § 31.004(a), a justice court judgment "is not res judicata and is not a basis for estoppel by judgment in a proceeding in a district court, except that a judgment rendered in a [justice court] is binding on the parties thereto as to recovery or denial of recovery." Tex. Civ. Prac. & Rem. Code Ann. § 31.004(a). In other words, the statute "modifies the common law so that res judicata bars only those claims that were actually litigated in the [justice court]; . . . res judicata does not bar unlitigated claims simply because they could have been litigated in the [justice court]." *Webb v. Persyn*, 866 S.W.2d 106, 107 (Tex. App.—San Antonio 1993, no writ). Here, Appellants do not contend that Appellees' fraud claim was actually litigated in justice court, only that Appellees had "an opportunity" to do so.

**D. Attorney's fees**

Appellants contend Appellees were not entitled to attorney's fees because they were not entitled to prevail on the merits and did not present adequate evidence of their fees. The substance of their argument reads as follows:

[A]s concerns the attorneys' fees subject of the Judgment, the Court should have disregarded the jury's answer and findings, because the evidence proves conclusively, as a matter of law, that:

---

[7] Appellants contend that collateral estoppel also applies, using virtually identical language. Collateral estoppel is inapplicable here for the same reasons as res judicata.

11

a. [Appellees] did not and should not have prevailed, as more fully discussed above; and

b. [Appellees] failed to adduce the legally necessary and sufficient detail to comply with the "Johnson" factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and the eight-factor test approved by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997), or the standard of proof enunciated in the Texas Supreme Court case of *El Apple I, Ltd. V. Olivas*, 370 S.W.3d 757, 55 Tex. Sup. Ct. J. 954 (Tex. 2012).

However, as discussed above, Appellants did not show that Appellees should not have prevailed on the merits. Further, while Appellants cite three cases involving attorney's fees, they do not identify the standards set forth in these cases; nor do they cite Appellees' counsel's testimony on the issue of attorney's fees or explain why such testimony fell short under the relevant standards. We conclude that this issue has been waived. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) ("If the issue is identified, then rule 38.1(i) calls for the brief to guide us through the appellant's argument with clear and understandable statements of the contentions being made. If we must speculate or guess about what contentions are being made, then the brief fails."); *id*. ("Importantly, statements of fact must be supported by direct references to the record that are precise in locating the fact asserted. If record references are not made . . ., the brief fails.").

### E. Prejudgment interest and total judgment

Appellants contend that, "in view of the foregoing," "the evidence herein conclusively establishes facts, which as a matter of law are very clearly contrary to the jury's answer and findings [relating to prejudgment interest and the total judgment." However, as discussed above, Appellants have not made such a showing as to the evidence or the facts.

### F. Denial of Appellants' causes of action[8]

Appellants contend they were entitled to judgment because Appellees nonsuited their

---

[8] Some of Appellants' contentions on this topic are repetitive; we address only those that are not.

affirmative defenses: "Adams and Shaner was entitled to a Trial Court judgment on their causes of action, in view of the nonsuit expressly nonsuiting 'with prejudice all . . . Affirmative Defenses . . . filed herein.'" (ellipses in original).

However, Appellants' use of ellipses here misrepresents the content of Appellees' notice of nonsuit, which stated that only the counterclaims in Appellees' second amended petition, and specifically not their affirmative defenses or denials, were being nonsuited:

> Comes Now Lona Diane Graves and Southwest Studios Corporation, Defendants and Counter-Plaintiffs, and announces that they nonsuit with prejudice all counterclaims asserted in Defendants' Second Amended Answer, Affirmative Defenses, Counter-Claims filed herein on April 26, 2016 against the Plaintiffs, **only. Nothing contained herein is intended to constitute a non-suit or waiver of any answer, denial, or affirmative defense as pled by Defendants in response to Plaintiffs claims.** [emphasis in the original].

Moreover, waiver of Appellees' affirmative defenses, had that occurred, would not have entitled Appellants to judgment, since they would still have had to satisfy the burden of proof on their claims. *See TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 464–65 (Tex. 2018) ("It is [a] well accepted postulate of the common law that a civil litigant who asserts an affirmative claim for relief has the burden to persuade the finder of fact of the existence of each element of his cause of action.").

Further, Appellants contend that, "in view of Shaner's 'Notice of Withdrawal of Nonsuit with Prejudice of Susan Leahy Shaner,' filed on March 2, 2020, the Trial Court committed legal error in totally disregarding the causes of action of Shaner." This argument is both conclusory and unsupported by citation to legal authority, and thus waived. Further, Appellants did not bring this issue to the trial court's attention in relation to the wording of the jury charge. *See Wackenhut*, 453 S.W.3d at 919–20 (to preserve charge error, party must make trial court aware of error and obtain a ruling); *see also* Tex. R. Civ. P. 272 ("[O]bjections [to the jury charge] shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall

be considered as waived."). Moreover, a notice of nonsuit is "effective when filed, and consequently, a litigant may not unilaterally withdraw its nonsuit, even before a dismissal order has been signed." *DHJB Dev., LLC v. Graham*, No. 03-18-00340-CV, 2018 WL 5814119, at *3 (Tex. App.—Austin Nov. 7, 2018, no pet.) (mem. op.); *see also id.* (noting that a plaintiff may seek to revive nonsuited claims by, e.g., filing a motion to withdraw the nonsuit).[9]

In addition, Appellants contend that, "at the jury trial, [they] adduced sufficient, persuasive and conclusive documentary evidence regarding the causes of action asserted by [Appellants] in their [second amended petition], and their entitlement to damages on their claims[,]" citing the record as follows: "(RR–(A):8–12–13, 14–15) (RR–8(A):73–74, 75, 83, 104, 114–130, 131–139, 141–146, 170–203, 254–266, 268–271, 275–296, 299–303, 314–321, 332–333, and 344–345) (RR–8(B):13–15, 17–23, 33, 34, 35–60, 63–66, 72, 75, 79, 80–83, 86–89, 90, 93–95, 102–142, and 202–248)." However, Appellants do not explain what evidence underlies these citations or how that evidence conclusively proved their claims and damages, and thus waive the issue. *See* Tex. R. App. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made[.]").

Finally, Appellants contend that, "at the closing arguments of the jury trial, undersigned counsel for [Appellants] addressed the causes of action asserted by [Appellants] in their [second amended petition], highlighting the evidence adduced by Appellants during the jury trial as follows," namely:

a. The "Offer to Purchase" at issue between Seller Adams and Buyers Carl and Lona, for the sale of the real property in question (i) had no closing date, (ii) did not suggest or permit the sale or the assignment of the property by Carl and/or Lona to someone else, or (iii) allow or permit the installation of utilities prior to the closing on the sale of the property.

---

[9] Appellants further contend that "Shaner was entitled to a Trial Court judgment on her causes of action, in view of Shaner's 'Notice Of Withdrawal Of Nonsuit . . . ,' filed on March 2, 2020." This argument, too, is both conclusory and unsupported by citation to legal authority, and thus waived. Moreover, even if Shaner had taken proper steps to revive her nonsuited claims and succeeded in doing so, revival of those claims would not have entitled her to judgment. Again, to recover on a claim for relief, a plaintiff must meet the relevant burden of proof. *TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 464–65 (Tex. 2018).

b. The "Offer to Purchase" was prepared by Buyers Carl and Lona, and provided to Seller Adams, but not in accordance with standard purchase and sale contracts, as per the Texas Real Estate Commission, particularly as concerns the requirements and timing of the issuance of a title commitment and a title policy.

c. The "Offer to Purchase" was prepared by Buyers Carl and Lona with the intentional omissions of standard and material purchase and sale provisions, "because Mr. Graves intended to install the services, develop the lot and then sell it to somebody else, without first buying it."

d. Adams then didn't hear from Carl "for more than a year", which was past the intended closing date of October 10th, 2019, and that therefore Adams believed the "Offer to Purchase" was no longer binding, as it was never agreed or stated that the "Offer to Purchase" would continue indefinitely.

e. Then, when Adams later came to El Paso, Texas, with her soon to be husband, Mr. Scott Taylor ("Scott"), she was surprised to learn (i) there was somebody living on that property, (ii) there was a mobile home on the subject property, (iii) there were electrical lines on the property, (iv) there was water and a septic tank that Mr. Graves apparently paid for, using the $3,600 that he received from Ms. Marisol Garcia, in his unauthorized sale of the property, by and through Studios, who wasn't even a party to the "Offer to Purchase."

f. Adams and Scott testified they didn't know, much less approve, Carl's unauthorized, unlawful fraudulent actions, concerning the use and sale of the property in question.

g. The notarized "Materialman's Lien" filed on subject property by Carl contained numerous misrepresentations of fact, which provided incontrovertible documentary evidence sufficient to support Appellants' claims, and the SAP's causes of action.

Appellants conclude that, based on the above recounting of their closing argument, the trial court should have granted their motion for new trial, "as the jury's answers and findings are against the great weight and preponderance of the evidence, and are manifestly unjust, as concerns Appellants' claims."

A jury's findings may be overturned for factual insufficiency only if they are "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A factual sufficiency review involves "weigh[ing] *all* of the evidence in the record," and comparing evidence that supports the findings with evidence that does not. *Id*. at 772–73 (emphasis in original). While Appellants' recounting of their closing argument may shed some light on their theory of the case, this recounting does not purport to

15

consider all of the relevant evidence, much less compare the evidence that supports the verdict with the evidence that does not. Further, Appellants' recounting is bereft of citations to the record or relevant authority. Additionally, this recounting and the matters it addresses were not mentioned in Appellants' motion for new trial, which is required for preservation of a factual sufficiency point. *See In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021) ("Preservation of a factual-sufficiency challenge requires a motion for new trial.").

Because we conclude that Appellants have not shown that the trial court erred in any respect, we overrule all challenges they have asserted to the trial court's judgment.

## V. CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

LISA J. SOTO, Justice

March 5, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.